STATE OF NORTH CAROLINA v. CELESTIO LEFRANZ HARRINGTON
AND CHRIS RATTIS

No. COA04-500

(Filed 21 June 2005)

**1. Criminal Law— joinder—common scheme to distribute marijuana**

The trial court did not abuse its discretion in a drug case by joining defendants' cases for trial over their objections, because: (1) defendants failed to show that they were deprived of a fair trial when evidence presented by the State including marijuana, large amounts of money, and drug paraphernalia, found at both an apartment and a house was ample evidence to convict both defendants of the marijuana charges individually or jointly; (2) a coparticipant's testimony was relevant to the conspiracy charge and would have been admissible against defendants individually in separate trials; and (3) the State sought to hold defendants accountable for the same crimes that arose at the same time, and the State's evidence was sufficient to show that defendants were involved in a common scheme to distribute marijuana.

**2. Drugs— trafficking in marijuana by possession, manufacture, and transportation—conspiracy to traffic marijuana—maintaining a place to keep a controlled substance—motion to dismiss—sufficiency of evidence**

The trial court did not err by denying defendants' motions to dismiss the charges of trafficking in marijuana by possession and manufacture, the conspiracy charges, and the charge of maintaining a place to keep and sell marijuana, but erred by denying defendants' motion to dismiss the charges of trafficking in marijuana by transportation, because: (1) the evidence of drug paraphernalia found in various areas of the house where both defendants resided and the testimony of a coparticipant that both defendants were engaged in the sale of marijuana and

that both had access to the garage was sufficient for the issue of possession to survive a motion to dismiss; (2) evidence of scales and plastic bags found with marijuana is sufficient evidence for the issue of manufacturing to be submitted to the jury; (3) there was insufficient evidence that defendants had carried or moved the marijuana from one place to another for the transportation charges; (4) the State presented a number of different acts which when taken together amount to substantial evidence that defendants had agreed to distribute marijuana for the conspiracy charge; and (5) although one defendant contends that neither the jury nor the trial court specifically found that he intentionally violated N.C.G.S. § 90-108(a) and thus the violation should have only been a Class 1 misdemeanor instead of a Class 1 felony, defendant did not present an argument in support of this assignment of error, defendant did not object to the jury instructions at trial nor did he assign them as error, and by finding defendant guilty of maintaining a place for keeping controlled substances, the jury inherently found defendant did so intentionally.

**3. Evidence— prior crimes or bad acts—relevant to conspiracy charge**

The trial court did not abuse its discretion in a drug case by admitting evidence of defendant's other crimes or wrongs under N.C.G.S. § 8C-1, Rule 403, because: (1) the evidence was relevant to an issue other than defendant's propensity to commit the crime; (2) the State offered the prior acts as being relevant to the issue of conspiracy since testimony offered included facts that were sufficiently similar to facts involved in the present charges including that he lived at the pertinent house address and had scales similar to those found in the apartment; and (3) defendant does not show that a different result would have been reached by the jury if this evidence had been excluded or that he was prejudiced in any way.

**4. Sentencing— decision to have jury trial—statutory minimum time**

The trial court did not err or commit plain error in a drug case by allegedly considering defendant's decision to have a jury trial when imposing his sentence, because: (1) defendant was sentenced to the statutory minimum amount of time for each conviction; and (2) the trial court consolidated the charges of maintaining a place for keeping a controlled substance and conspiracy to traffic in marijuana for sentencing.

**5. Constitutional Law— effective assistance of counsel—concession of guilt**

Defendant did not receive ineffective assistance of counsel in a drug case even though he contends his counsel allegedly conceded his guilt in the closing argument without having defendant's consent, because: (1) the pertinent statement when viewed in context does not concede any crime; (2) counsel's statement to the jury suggested that defendant may have been guilty of lesser offenses involving marijuana in the past, such as smoking marijuana, but was not guilty of trafficking in marijuana; (3) counsel's statement taken in context was consistent with the overall theory of his closing argument that defendant was not guilty of trafficking in marijuana; and (4) defendant was not prejudiced since both the trial court and defense counsel took adequate measures to correct any prejudicial effect of counsel's statement.

**6. Appeal and Error— preservation of issues—failure to argue**

Defendant's remaining assignments of error are deemed abandoned under N.C. R. App. P. 28(b)(6) because defendant failed to argue them.

Appeal by defendants from judgments entered 29 September 2003 by Judge James Floyd Ammons, Jr. in Superior Court, Cumberland County. Heard in the Court of Appeals 11 January 2005.

*Attorney General Roy Cooper, by Special Deputy Attorney General E. Burke Haywood and Assistant Attorney General Steven Armstrong, for the State.*

*Jeffrey Evan Noecker for defendant Celestio Lefranz Harrington.*

*McCotter, Ashton & Smith, P.A., by Rudolph A. Ashton, III and Kirby H. Smith, III, for defendant Chris Rattis.*

McGEE, Judge.

Celestio Lefranz Harrington (Harrington) and Chris Rattis (Rattis) (collectively defendants) were convicted of trafficking in marijuana by possession, trafficking in marijuana by manufacture, trafficking in marijuana by transportation, conspiracy to traffic marijuana, and maintaining a place to keep a controlled substance. Defendants were each sentenced to four consecutive terms of thirty-five to forty-two months.

STATE v. HARRINGTON

[171 N.C. App. 17 (2005)]

The State's evidence at trial showed that on 10 April 2002, S.B.I. Special Agent Errol Jarman (Agent Jarman) intercepted a United Parcel Service package that he believed contained marijuana. Based on a canine inspection, Agent Jarman obtained a search warrant for the package and discovered marijuana therein. The package was addressed to a woman at 405-B Monza Court (the apartment). Agent Jarman and the Fayetteville Police Department conducted a controlled delivery of the package to the apartment. The apartment was leased to Charles Veal (Veal). Rattis was the only person at the apartment when Agent Jarman, working undercover, delivered the package.

After the package was delivered, the police entered the apartment to conduct a search pursuant to a warrant. They found scales, packages of sandwich bags, a .38 caliber revolver, bullets, and a block of marijuana. Rattis was detained by the police, after trying to exit the rear of the apartment.

The police also searched a vehicle located outside of the apartment that Rattis said belonged to a friend. Police found a rental agreement in the vehicle in the name of Joi Norfleet (Norfleet), for a house located at 6313 Rhemish Drive (the house). Police officers went to the house, which was five miles from the apartment. Norfleet answered the door and permitted the police to search the house, except for Harrington's bedroom. Defendants were both residents of the house, along with Norfleet.

In the garage of the house, police found a locked cardboard container, a large plastic outdoor trash bag filled with one to two thousand "dime bags" generally used for storing small amounts of marijuana, and a trash can with marijuana residue and seeds in it. Inside the house, police found a small bag of marijuana in one of Norfleet's dressers. In the kitchen, the police found a bag of marijuana, a digital scale, and a vacuum sealer, which is often used to package marijuana. In the bedroom shared by Rattis and Norfleet, the police found guns, a book on drug enforcement, large amounts of money, and multiple identification documents with Rattis's picture but with different names. The police also found a key to the locked cardboard container they had seen in the garage. When they opened the locked container, they found more than fifty-eight pounds of marijuana bricks, along with a note from Norfleet dated 7 April 2002, which indicated Norfleet had opened one of the bricks of marijuana, had sold a couple of ounces, and had kept some for herself.

Since Harrington was not present at the house, the police obtained a warrant to search his bedroom. In the bedroom, police found a set of scales, plastic bags containing marijuana residue, a bullet-proof vest, approximately $2,000 in cash, some credit cards bearing various names, and a large amount of marijuana.

Defendants, Norfleet, and Veal were arrested. Norfleet was offered a lesser sentence to testify against Veal and defendants. She testified that Veal and defendants had previously lived together in a house located at 6121 Conoway Drive, and that she thought Veal and defendants had engaged in distributing drugs. Norfleet further testified that she and defendants later lived together at the house located at 6313 Rhemish Drive, and that Veal lived at the apartment, but occasionally came to the house. Norfleet testified that defendants were selling marijuana, that the house was used for storing marijuana, and that the apartment was used for distribution.

During the trial, Veal changed his plea of not guilty to guilty. Defendants were given the same opportunity to change their pleas but chose to continue their jury trial. Harrington did not present any evidence, but Rattis testified on his own behalf.

Rattis testified that he was involved in many moneymaking enterprises, including buying and selling vehicles at auctions, working in the restaurant business, and working as a music promoter. He also testified that he had been unable to open a bank account in the United States because he was a Jamaican citizen, so he had to keep his money in his bedroom. Rattis further testified that he had been thinking about moving out of the house, and that he had gone to talk with a rental agent on 10 April 2002. When the agent was unavailable, Rattis went to the apartment to watch television while he waited for the rental agent to return. He also testified that he met women at the apartment because he did not want to tell people where he lived, and he did not want to bring other women to the house where he lived with Norfleet. Rattis testified that he was watching the news when a man arrived with a package. He stated that he refused to accept the package because it was not addressed to Veal or Veal's girlfriend, but that nevertheless, the delivery person left the package on the floor. Rattis testified that soon after the delivery, people banged on the door, entered the apartment, and pointed a firearm at his chest, which is why he went to the rear sliding door. He also testified that he did not know about the marijuana in the garage of the house because he had been out of town for several weeks.

I.

**[1]** Defendants first argue that the trial court erred in joining defendants' cases for trial, over their objections. Defendants filed a motion for severance, which was argued at a pre-trial hearing. Harrington renewed his motion to sever at the close of the State's evidence, and at the close of all of the evidence. The trial court allowed joinder and denied all motions to sever. Defendants argue that by joining their cases, the trial court denied defendants a fair trial.

Upon written motion of the State, a trial court *may* join the trials for two or more defendants "[w]hen each of the defendants is charged with accountability for each offense," or when the several offenses charged were "part of a common scheme or plan; . . . part of the same act or transaction; or . . . so closely connected in time, place, and occasion that it would be difficult to separate proof of one charge from proof of the others." N.C. Gen. Stat. § 15A-926(b)(2) (2003). The State, in the present case, moved to join defendants' trials because each defendant was charged with the accountability of each offense, and because the evidence tended to show that defendants were engaged in a common scheme or plan to distribute marijuana.

Defendants each assert that the State's public policy interests "cannot stand in the way of a fair determination of guilt or innocence." *See State v. Hucks*, 323 N.C. 574, 582, 374 S.E.2d 240, 245 (1988). The trial court must, upon motion, "deny a joinder for trial or grant a severance of defendants" when necessary to fairly determine "the guilt or innocence of one or more of the defendants." N.C. Gen. Stat. § 15A-927(c)(2) (2003). However, "[t]he trial court's decision as to whether to grant a motion for severance under the statute is an exercise of discretion, and its ruling will not be disturbed on appeal unless the defendant demonstrates an abuse of discretion which effectively deprived him of a fair trial." *Hucks*, 323 N.C. at 582, 374 S.E.2d at 245. "An appellate court should affirm a discretionary decision by the trial court that is supported by the record, and reverse only where the decision is manifestly unsupported by reason and so arbitrary that it could not have been the result of a reasoned decision." *State v. Morgan*, 359 N.C. 131, 148-49, 604 S.E.2d 886, 897 (2004) (internal quotations and citations omitted).

Defendants argue that by joining their cases, the trial court forced defendants to defend themselves against each other, rather than against the charges. They argue that while examining witnesses, each of their defense counsel had to deflect the blame from his

respective client by casting blame on the other. Defendants further argue that their defenses were inherently antagonistic and that evidence was admitted at trial that would have been excluded had defendants been tried separately. *See State v. Foster*, 33 N.C. App. 145, 149, 234 S.E.2d 443, 446 (1977) (stating "the existence of antagonistic defenses, or the admission of evidence[,] which would be excluded on a separate trial," was evidence that "a joint trial would be prejudicial and unfair"). Specifically, Rattis argues that the evidence of other crimes or wrongful acts committed by Harrington had no probative value for Rattis, and therefore prejudiced Rattis. Harrington similarly argues that there was no evidence linking him to the apartment, and that in a separate trial this evidence would not have been admitted against him. We note, however, that Norfleet's testimony that defendants would sometimes go to the apartment and that defendants used the apartment to distribute marijuana, linked Harrington to the apartment.

The admission of evidence that would not be admitted in separate trials or the presence of antagonistic defenses does not necessarily require severance. *See State v. Nelson*, 298 N.C. 573, 587, 260 S.E.2d 629, 640 (1979), *cert. denied, Jolly v. North Carolina*, 446 U.S. 929, 64 L. Ed. 2d 282 (1980). Rather, "[t]he test is whether the conflict in defendants' respective positions at trial is of such a nature that, considering all of the other evidence in the case, defendants were denied a fair trial." *Id.* In the present case, defendants fail to show that they were deprived of a fair trial. Evidence presented by the State, including marijuana, large amounts of money, and drug paraphernalia, found at both the apartment and the house was ample evidence to convict both defendants of the marijuana charges, individually or jointly. Furthermore, Norfleet's testimony was relevant to the conspiracy charge, and would have been admissible against defendants individually in separate trials. Therefore, defendants' arguments of possible prejudice are insufficient to show that the trial court abused its discretion in joining the cases for trial. The State sought to hold defendants accountable for the same crimes that arose at the same time, and the State's evidence was sufficient to show that defendants were involved in a common scheme to distribute marijuana. The trial court did not err in joining defendants' cases for trial.

II.

[2] Defendants next argue that the trial court erred in denying their motions to dismiss the charges against them. Defendants moved to dismiss all charges against each of them at the close of the State's evi-

dence, and at the close of all of the evidence. These motions were denied. A defendant's motion to dismiss is properly denied when "there is substantial evidence (1) of each essential element of the offense charged, or of a lesser offense included therein, and (2) of defendant's being the perpetrator of such offense." *State v. Powell*, 299 N.C. 95, 98, 261 S.E.2d 114, 117 (1980). Substantial evidence is such "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *State v. Fletcher*, 301 N.C. 709, 712, 272 S.E.2d 859, 861 (1981). In ruling on a defendant's motion to dismiss, the trial court must consider the evidence in the light most favorable to the State, and the State is entitled to every reasonable inference that can be drawn from the evidence. *Powell*, 299 N.C. at 99, 261 S.E.2d at 117. "Any contradictions or discrepancies in the evidence are for resolution by the jury." *State v. Brown*, 310 N.C. 563, 566, 313 S.E.2d 585, 587 (1984).

A.

Defendants were each charged with three counts of trafficking in marijuana: by possession, by manufacture, and by transportation. The State had to prove that defendants respectively possessed, manufactured, and transported more than fifty pounds but less than 2,000 pounds of marijuana. N.C. Gen. Stat. § 90-95(h)(1)(b) (2003). Neither Harrington nor Rattis disputes the amount or weight of the marijuana found in the garage of the house. Rather, they argue that there was insufficient evidence on the issues of possession, manufacturing and transportation.

Possession of a controlled substance may be actual or constructive. *State v. Harvey*, 281 N.C. 1, 12, 187 S.E.2d 706, 714 (1972). "An accused has possession of contraband material within the meaning of the law when he has both the power and the intent to control its disposition or use." *State v. Davis*, 25 N.C. App. 181, 183, 212 S.E.2d 516, 517 (1975). When narcotics "are found on the premises under the control of an accused, this fact, in and of itself, gives rise to an inference of knowledge and possession which may be sufficient to carry the case to the jury on a charge of unlawful possession." *Harvey*, 281 N.C. at 12, 187 S.E.2d at 714. "[W]here possession of the premises is nonexclusive, constructive possession of the contraband materials may not be inferred without other incriminating circumstances." *Brown*, 310 N.C. at 569, 313 S.E.2d at 589.

In the present case, neither Harrington nor Rattis had exclusive possession of the marijuana found in the garage of the house. For this reason, each argues that there was insufficient evidence that he

STATE v. HARRINGTON

[171 N.C. App. 17 (2005)]

had dominion or control over the marijuana. However, the State presented other incriminating evidence that was sufficient to allow the charge of possession for each defendant to go to the jury. In particular, the evidence of drug paraphernalia found in various areas of the house where both defendants resided, and the testimony of Norfleet that both defendants were engaged in the sale of marijuana and both had access to the garage, was sufficient for the issue of possession to survive a motion to dismiss.

Similarly, defendants each assert that the trial court erred when it denied their motions to dismiss on the charge of trafficking in marijuana by manufacture. Under the Controlled Substances Act, "manufacture . . . includes any packaging or repackaging of the substance or labeling or relabeling of its container[.]" N.C. Gen. Stat. § 90-87(15) (2003). Defendants concede that the police found a large plastic trash bag containing one to two thousand plastic "dime bags" near the marijuana in the garage, and found a scale and a vacuum sealer in the kitchen. Rattis argues, however, that the above definition of "manufacture" requires the active manufacturing of a controlled substance, i.e., that a defendant be actively engaged in packaging, repackaging, or labeling, rather than merely prepared to manufacture. Rattis contends that the trial court erred because no evidence was offered to show that defendants were engaged in manufacturing, only that defendants were equipped to manufacture marijuana, but had not begun to do so. However, our Court has held that evidence of scales and plastic bags found with marijuana is sufficient evidence for the issue of manufacturing to be submitted to a jury. *State v. Roseboro*, 55 N.C. App. 205, 210, 284 S.E.2d 725, 728 (1981), *disc. review denied*, 305 N.C. 155, 289 S.E.2d 566 (1982). Moreover, in the present case, Norfleet testified that Rattis used the scale and vacuum sealer found in the kitchen to weigh and package marijuana for distribution. We overrule Rattis's assignment of error on this issue.

Harrington argues that there was insufficient evidence that he ever manufactured the marijuana found in the garage. Harrington argues that while Norfleet testified that Rattis used a vacuum sealer to package the marijuana, no evidence suggested that Harrington was ever present while the marijuana was being packaged or that he ever engaged in the packaging. However, Norfleet testified that both defendants had access to the garage where one to two thousand "dime bags" were found, and certainly both defendants had access to the kitchen where the scale and vacuum sealer were found. Norfleet also identified the bags found in the garage as bags that were used by

defendants to distribute marijuana. Additionally, police found, among other things, a set of scales and plastic bags containing marijuana residue in Harrington's bedroom. There was substantial evidence of manufacture, and the trial court properly denied Harrington's motion to dismiss this charge.

Defendants also assign as error the trial court's denial of their motions to dismiss the charge of trafficking in marijuana by transportation. "Transportation" is the "real carrying about or movement from one place to another." *State v. Outlaw*, 96 N.C. App. 192, 197, 385 S.E.2d 165, 168 (1989) (citation omitted), *disc. review denied*, 326 N.C. 266, 389 S.E.2d 118 (1990). We agree with defendants that the trial court erred in submitting this issue to the jury when there was insufficient evidence that defendants had carried or moved the marijuana from one place to another.

The State argues that according to Norfleet's testimony, defendants stored the marijuana at the house and used the apartment for distribution, thus implying that defendants had to move the marijuana from the house to the apartment. However, absent other evidence of transportation, this implication is insufficient to overcome a motion to dismiss. *See State v. Lorenzo*, 147 N.C. App. 728, 732-33, 556 S.E.2d 625, 627 (2001) ("[W]e have found no case in North Carolina that recognizes the doctrine of constructive transportation."). Our Courts have previously found sufficient evidence of transportation of a controlled substance only when a defendant can be shown to have actively moved or carried the controlled substance.

For example, we have held that there was sufficient evidence of transportation when a defendant was observed moving a controlled substance from one place to another in a vehicle, even for a minimal distance. *See Outlaw*, 96 N.C. App. at 197, 385 S.E.2d at 168-69 (holding that there was sufficient evidence of transporting cocaine when the defendant carried cocaine from his home to his truck, got into the truck, and had begun backing down his driveway when the police stopped him); *see also State v. McRae*, 110 N.C. App. 643, 646, 430 S.E.2d 434, 437 (holding that evidence that the "defendant removed the drugs from a dwelling house and carried them to a car by which he left the premises" was "sufficient to sustain the charge of trafficking by transporting in violation of G.S. § 90-95(h)(3)"), *disc. review denied*, 334 N.C. 625, 435 S.E.2d 347 (1993). Additionally, our Court has held that a defendant personally tossing a bag or package containing a controlled substance may constitute real movement to sup-

port a charge of trafficking by transportation. *See State v. Wilder*, 124 N.C. App. 136, 140, 476 S.E.2d 394, 397 (1996); *State v. Greenidge*, 102 N.C. App. 447, 450-51, 402 S.E.2d 639, 641 (1991).

In the present case, however, no one testified to observing Harrington or Rattis personally or actively moving or carrying any controlled substance. There was therefore insufficient evidence to support the charge of trafficking by transportation, and the trial court erred in submitting this issue to the jury. Since defendants were convicted of this charge and were sentenced to an additional thirty-five to forty-two months for the charge, the error was not harmless. We therefore vacate defendants' convictions of trafficking in marijuana by transportation.

B.

Defendants next assign as error the trial court's denial of their motions to dismiss the conspiracy charges against them. " 'A criminal conspiracy is an agreement, express or implied, between two or more persons to do an unlawful act or to do a lawful act by unlawful means.' " *State v. Clark*, 137 N.C. App. 90, 95, 527 S.E.2d 319, 322 (2000) (citations omitted). In the present case, there is no direct evidence of an agreement to traffic in marijuana, but " '[d]irect proof of conspiracy is rarely available, so the crime must generally be proved by circumstantial evidence.' " *Id.* (citation omitted). "A conspiracy 'may be, and generally is, established by a number of indefinite acts, each of which, standing alone, might have little weight, but, taken collectively, they point unerringly to the existence of a conspiracy.' " *Id.* (quoting *State v. Whiteside*, 204 N.C. 710, 712, 169 S.E. 711, 712 (1933)).

The State presented a number of different acts, which, when taken together, amount to substantial evidence that defendants had agreed to distribute marijuana. Norfleet testified that defendants and Veal were engaged in distributing marijuana as early as 2000, and that Harrington and Rattis each had access to the fifty-eight pounds of marijuana in the garage. Norfleet further testified that the house where both defendants lived, was used to store marijuana and that the apartment, where Veal lived, was used to distribute marijuana. Rattis was at the apartment when Agent Jarman made a controlled delivery of a package containing marijuana. Marijuana, scales, packaging materials, and weapons were found at both the apartment and the house. This incriminating evidence was found in each of defendants' bedrooms, as well as in public areas of the house. Based on this

evidence, the trial court did not err in denying defendants' motions to dismiss the conspiracy charge.

C.

Rattis also assigns as error the trial court's denial of his motion to dismiss the charge of maintaining a place to keep and sell marijuana. N.C. Gen. Stat. § 90-108(a)(7) (2003) states that it is unlawful for a person "[t]o knowingly keep or maintain any . . . dwelling house, . . . or any place . . . for the purpose of using [controlled] substances, or which is used for the keeping or selling of the same[.]" A person who violates N.C.G.S. § 90-108(a) "shall be guilty of a Class 1 misdemeanor[,]" unless "the criminal pleading alleges that the violation was committed intentionally, and upon trial it is specifically found that the violation was committed intentionally," then the violation "shall be a Class 1 felony." N.C. Gen. Stat. § 90-108(b) (2003).

Rattis does not argue that the State failed to present substantial evidence of all of the elements of this charge. Rather, he contends that neither the jury nor the trial court specifically found that Rattis *intentionally* violated N.C.G.S. § 90-108(a), and thus the violation of N.C.G.S. § 90-108(a) should have only been a Class 1 misdemeanor, not a Class 1 felony. Because Rattis does not present an argument in support of this assignment of error, the assignment of error is deemed abandoned pursuant to N.C. R. App. P. 28(b)(6).

Furthermore, though Rattis did not object to the jury instructions at trial and did not assign them as error, we note that the trial court's instruction to the jury on maintaining a place to keep controlled substances included intent as one of the elements of the crime. Specifically, the trial court stated:

> [Rattis] has also been charged with intentionally keeping or maintaining a building, which is used for the purpose of unlawfully keeping or selling controlled substances. For you to find [Rattis] guilty of this offense, the State must prove two things beyond a reasonable doubt. First, that [Rattis] kept or maintained a building, which was for the purpose of unlawfully keeping or selling marijuana. Marijuana is a controlled substance, the keeping or selling of which is unlawful. And, second, that [Rattis] did this intentionally.

Since intent was an element of the crime, the jury had to find this element beyond a reasonable doubt to convict Rattis of maintaining

a place for keeping a controlled substance. Thus, by finding Rattis guilty of maintaining a place for keeping controlled substances, the jury inherently found that Rattis did so intentionally. The trial court did not err in treating Rattis's violation of N.C.G.S. § 90-108(a) as a felony.

## III.

**[3]** Rattis presents no additional assignments of error, but Harrington argues that the trial court erred in admitting evidence of Harrington's other crimes or wrongs pursuant to Rules 403 and 404 of the North Carolina Rules of Evidence. Rule 404(b) states:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake, entrapment or accident. Admissible evidence may include evidence of an offense committed by a juvenile if it would have been a Class A, B1, B2, C, D, or E felony if committed by an adult.

N.C. Gen. Stat. § 8C-1, Rule 404(b) (2003). "The list of permissible purposes for admission of 'other crimes' evidence is not exclusive, and such evidence is admissible as long as it is relevant to any fact or issue other than the defendant's propensity to commit the crime." *State v. White*, 340 N.C. 264, 284, 457 S.E.2d 841, 852-53, *cert. denied*, 516 U.S. 994, 133 L. Ed. 2d 436 (1995). "Once the trial court determines evidence is properly admissible under Rule 404(b), it must still determine if the probative value of the evidence is substantially outweighed by the danger of unfair prejudice." *State v. Bidgood*, 144 N.C. App. 267, 272, 550 S.E.2d 198, 202 (citing N.C. Gen. Stat. § 8C-1, Rule 403), *cert. denied*, 354 N.C. 222, 554 S.E.2d 647 (2001). "That determination is within the sound discretion of the trial court, whose ruling will be reversed on appeal only when it is shown that the ruling was so arbitrary that it could not have resulted from a reasoned decision." *Bidgood*, 144 N.C. App. at 272, 550 S.E.2d at 202.

The State presented evidence of two prior wrongs or acts committed by Harrington. The first occurred a year and a half prior to the present charges. Harrington was a passenger in a vehicle that had been stopped for a traffic violation and the officer testified at the present trial that he had smelled marijuana coming from the vehicle. Harrington was not charged with any marijuana offense and all other

charges against him were dismissed. The second prior act that was admitted into evidence occurred more than a year before the present charges. An officer had found Harrington asleep at the wheel of a vehicle, and a bag of marijuana and a set of scales had been plainly visible inside the vehicle.

Though neither of these prior incidents involved Rattis or Veal, the State offered these prior acts as evidence of conspiracy. In each incident, the officers had asked Harrington where he was living, and Harrington had responded that he lived at 6121 Conoway Drive. In the present case, the State argued that this evidence should be admissible as evidence of conspiracy because it corroborated Norfleet's testimony that defendants and Veal had previously lived together at 6121 Conoway Drive. Moreover, the State argued that the evidence was relevant to the conspiracy charge because the scales seized during the second prior act were the same type of scales found at the apartment. Since this evidence of prior acts by Harrington was relevant to an issue other than his propensity to commit the crime, the trial court did not err in determining that this evidence was admissible under Rule 404(b) of the North Carolina Rules of Evidence. N.C. Gen. Stat. § 8C-1, Rule 404(b) (2003). The question before us is whether the trial court abused its discretion in determining that the probative value of this evidence of prior bad acts outweighed the possible prejudicial effect. *See* N.C. Gen. Stat. § 8C-1, Rule 403 (2003).

In engaging in a Rule 403 analysis, " 'the ultimate test of admissibility is whether [the prior acts] are sufficiently similar and not so remote' " to the charges or acts presently at issue. *State v. Ferguson*, 145 N.C. App. 302, 305, 549 S.E.2d 889, 892 (quoting *State v. West*, 103 N.C. App. 1, 9, 404 S.E.2d 191, 197 (1991)), *disc. review denied*, 354 N.C. 223, 554 S.E.2d 650 (2001). Harrington argues that the prejudicial effect of this evidence outweighed the probative value because neither of the prior acts was sufficiently similar to the current charges. He argues that both of these prior incidents occurred in vehicles in which he was either a passenger or driver. He further argues that the prior acts involved only the odor of marijuana, or a small bag of marijuana, while the current charges involve a trafficking amount of marijuana found in a residence. Harrington also argues that as these prior acts occurred at least a year before the current charges, they were too remote in time to be probative.

Our Court has held that "[t]he similarities between the other crime, wrong or act and the crime charged need not, however, 'rise to the level of the unique and bizarre in order for the evidence to be

admitted under Rule 404(b).' " *Ferguson,* 145 N.C. App. at 306, 549 S.E.2d at 892 (quoting *State v. Thomas,* 350 N.C. 315, 356, 514 S.E.2d 486, 511 (1999)). Furthermore, "remoteness in time generally goes to the weight of the evidence not its admissibility." *Ferguson,* 145 N.C. App. at 306, 549 S.E.2d at 892. The trial court admitted evidence of the prior acts as being relevant to the issue of conspiracy because the testimony offered included facts that were sufficiently similar to facts involved in the present charges. Those similar facts were that Harrington had lived at 6121 Conoway Drive and had scales similar to those found at the apartment. Thus, the trial court's Rule 403 determination was not "so arbitrary that it could not have resulted from a reasoned decision." *See Bidgood,* 144 N.C. App. at 272, 550 S.E.2d at 202.

Moreover, Harrington does not show that a different result would have been reached by the jury if this evidence had been excluded. "The party who asserts that evidence was improperly admitted usually has the burden to show the error and that he was prejudiced by its admission." *State v. Anthony,* 133 N.C. App. 573, 579, 516 S.E.2d 195, 199 (1999), *aff'd,* 351 N.C. 611, 528 S.E.2d 321 (2000). Furthermore, "evidentiary errors are harmless unless defendant proves that absent the error, a different result would have been reached." *State v. Campbell,* 133 N.C. App. 531, 540, 515 S.E.2d 732, 738, *disc. review denied,* 351 N.C. 111, 540 S.E.2d 370 (1999). Even assuming *arguendo* that the trial court erred, given the physical evidence found at the house showing that Harrington was trafficking in marijuana, and Norfleet's testimony linking Harrington to Rattis, Veal, and to the apartment, Harrington has failed to show that he was prejudiced by the admission of his prior acts. We overrule this assignment of error.

IV.

[4] Harrington next argues that the trial court erred in considering Harrington's decision to have a jury trial when imposing Harrington's sentence. A trial court, at sentencing, may not punish a defendant for exercising his constitutional right to a jury trial. *State v. Cannon,* 326 N.C. 37, 39, 387 S.E.2d 450, 451 (1990). However, for us to properly review this assignment of error, Harrington must have presented this argument to the trial court. The record shows that Harrington did not object at trial to what he now deems to be improper statements by the trial court. He therefore failed to preserve this issue for appeal. *See* N.C. R. App. P. 10(b)(1). Though an issue not properly preserved at trial may be reviewed as plain error, N.C. R. App. P. 10(c)(4),

Harrington does not argue plain error, and therefore waives his right to plain error review.

We note that in our review of the record, we see no error or plain error in the trial court's statements to Harrington. To the contrary, the trial court ensured that defendants were informed of the implications of their pleas in light of the substantial evidence against them. During the trial, when Veal changed his plea, the trial court offered defendants the opportunity to receive less than the minimum sentences they would receive if convicted if they chose to change their pleas. The trial court further explained to defendants:

> If you are convicted, there are minimum sentences that you'll have to serve. And I'm not saying that you'll get more than this. You certainly won't get any less because of the minimum sentences. If you are found guilty, I'll make a judgment at that time.

When Harrington was convicted, the trial court sentenced him to the statutory minimum amount of time in prison for each conviction, being thirty-five to forty-two months. *See* N.C. Gen. Stat. § 90-95(h)(1)(b) (2003). The trial court also consolidated the charges against Harrington of maintaining a place for keeping a controlled substance and conspiracy to traffic in marijuana for sentencing. The trial court did not err.

V.

[5] Finally, Harrington argues that he received ineffective assistance of counsel and was thereby denied his Sixth Amendment right to a jury trial when his counsel conceded Harrington's guilt in the closing argument without having Harrington's consent. Generally, assistance of counsel is deemed ineffective when a defendant shows that "counsel's performance was deficient" and that "the deficient performance prejudiced the defense." *Strickland v. Washington*, 466 U.S. 668, 687, 80 L. Ed. 2d 674, 693 (1984). However, in certain circumstances, the deficiency of the counsel's performance is so great that prejudice need not be argued. *United States v. Cronic*, 466 U.S. 648, 658, 80 L. Ed. 2d 657, 667 (1984). Following *Strickland* and *Cronic*, our Supreme Court determined that a defendant receives *per se* ineffective assistance of counsel when "the defendant's counsel admits the defendant's guilt to the jury without the defendant's consent." *State v. Harbison*, 315 N.C. 175, 180, 337 S.E.2d 504, 507-08 (1985), *cert. denied*, 476 U.S. 1123, 90 L. Ed. 2d 672 (1986). However, our Supreme Court also held in *State v. Gainey* that an

STATE v. HARRINGTON

[171 N.C. App. 17 (2005)]

argument that "the defendant is innocent of all charges, but if he is found guilty of any of the charges it should be of a lesser crime because the evidence came closer to proving that crime than any of the greater crimes charged, is not an admission that the defendant is guilty of anything, and the rule of *Harbison* does not apply."

*Gainey,* 355 N.C. 73, 92-93, 558 S.E.2d 463, 476 (quoting *State v. Harvell,* 334 N.C. 356, 361, 432 S.E.2d 125, 128 (1993)), *cert. denied,* 537 U.S. 896, 154 L. Ed. 2d 165 (2002).

Harrington argues that his counsel conceded Harrington's guilt in front of the jury during the closing argument without Harrington's permission, when his counsel said: "I'd submit to you that [Harrington] is a small time player in this operation. He hadn't fully moved [into] the league that [Rattis] was in." However, when viewed in context, we do not find that this statement conceded any crime. Harrington's counsel was recalling Norfleet's testimony to the jury when he made the above statement. Harrington's counsel was using Norfleet's testimony that she and Harrington had smoked marijuana together to demonstrate that Harrington was not in the business of selling or trafficking marijuana by contrasting it with Norfleet's testimony that Rattis did not smoke marijuana because he did not want to reduce his profits. Specifically, counsel said: "If you're a dealer, you're not going to be using your own product and wasting it. You're going to be trying to turn a profit, make as much money off of it. That's not what [Harrington] was doing." Counsel's next statement was the challenged statement:

> I'd submit to you that [Harrington] is a small player in this operation. He hadn't fully moved [into] the league that [Rattis] was in. Just like [Harrington] hadn't fully moved [into the house]. He was still on the outside looking in. And I don't think he knew—or I submit to you, based on the evidence, that he knew what was in those barrels and—all the weapons in this house.

The trial court interrupted counsel's closing argument at this point and asked the jury to leave the courtroom.

Rather than being a concession of Harrington's guilt, counsel's statement to the jury suggested that Harrington may have been guilty of lesser offenses involving marijuana in the past, such as smoking marijuana, but was not guilty of trafficking in marijuana. Taken in context, counsel's statement was consistent with the overall theory of

his closing argument that Harrington was not guilty of trafficking in marijuana. *See Gainey*, 355 N.C. at 93, 558 S.E.2d at 476 (finding no error when the defense counsel stated that the defendant was guilty of a lesser crime if guilty of anything, and when the consistent theory presented to the jury was that the defendant was not guilty).

Furthermore, Harrington was not prejudiced, because both the trial court and Harrington's counsel took adequate measures to correct any prejudicial effect of counsel's statement. *See State v. Mason*, 159 N.C. App. 691, 693-94, 583 S.E.2d 410, 411-12 (2003) (stating that any prejudice to the defendant when the defense counsel mistakenly said that his client should not be found innocent "was cured by additional argument made by defense counsel emphasizing defendant's innocence"). As mentioned above, the trial court stopped counsel's closing argument as soon as the challenged statement was made, and excused the jury. The trial court then gave Harrington an opportunity to object to his counsel's statement, gave a correcting instruction to the jury when it returned, and allowed Harrington's counsel the opportunity to explain his statement to the jury. Counsel explained:

> The lawyer is supposed to be very careful with the words he chooses and uses in the courtroom. And when I said that [Harrington] was a small player in this, I was referring to the testimony of Ms. Norfleet. That's basically what she said. I'm not saying he's guilty of what he's charged with in any way. I'm saying that he wasn't living at that place on a permanent basis. He didn't know that the marijuana was out in the garage. He didn't know all the paraphernalia, the guns and everything else that's been introduced into evidence was in that house.

> What I was trying to imply and a bit clumsily, I guess, was that [Harrington]—he may have smoked marijuana in the past. And he may have hung out with—with friends who you wouldn't want your son or daughter to hang out with. But he hadn't fully moved in with them to the point that he was guilty of what he's charged with, that he was in conspiracy with [Rattis].

Thus, Harrington has failed to show he received ineffective assistance of counsel, and we overrule this assignment of error.

[6] Harrington's remaining assignments of error are deemed abandoned pursuant to N.C. R. App. P. 28(b)(6) for lack of argument.

We vacate defendants' convictions of trafficking in marijuana by transportation. We find no error in defendants' additional convictions.

**IN RE T.K., D.K., T.K. & J.K.**

[171 N.C. App. 35 (2005)]

Vacated in part, no error in part.

Judges WYNN and TYSON concur.