STATE OF NORTH CAROLINA v. JOVAR LAMAR ROSS, Defendant

No. COA09-1021

(Filed 19 October 2010)

**1. Jury— deliberations—deadlocked—trial court comments did not coerce verdict**

The trial court did not commit plain error in a delivery of a counterfeit controlled substance case by its instructions and remarks to a deadlocked jury. The trial court's comments did not have the effect of coercing the jury to reach a verdict, and the totality of circumstances revealed that a second *Allen* instruction was not required. Some of the trial court's comments were not subject to plain error review as they were not jury instructions, but instead were discretionary rulings by the trial court. Further, the trial court should have refrained from entering the jury room during deliberations to discuss the jury's progress, to avoid the possibility of improperly influencing the jury.

**2. Appeal and Error— preservation of issues—failure to timely object at trial**

Although defendant contended in a delivery of a counterfeit controlled substance case that the trial court violated its statutory duties under N.C.G.S. § 15A-1234(c) to inform the parties generally of the instructions it intended to give the deadlocked jury and afford them an opportunity to be heard, defendant waived this argument under N.C. R. App. P. 10(b)(1) by failing to timely object at trial. Defendant's argument did not fit within the exception under N.C.G.S. § 15A-1446(d)(12). Further, defendant failed to argue plain error.

**3. Jury— deliberations—bailiff delivered requested exhibit to jury room—failure to bring jury back to courtroom**

Although the trial court technically violated N.C.G.S. § 15A-1233(a) in a delivery of a counterfeit controlled substance case by instructing the bailiff to deliver a requested exhibit to the jury room during deliberations with the instruction "we need that back" without bringing the jury back to the courtroom for the instruction, it was not prejudicial error. "We need that back" was not a communication regarding material matters of the case. Further, the bailiff was a sworn officer of the court whose normal duties included conveying certain communications between the court and the jury.

4. **Appeal and Error— preservation of issues—failure to object at trial**

Although defendant contended the trial court erred in a delivery of a counterfeit controlled substance case by permitting the State to read a portion of defendant's indictment to the jury in violation of N.C.G.S. § 15A-1221(b), defendant waived this argument under N.C. R. App. P. 10(b)(1) by failing to object at trial.

5. **Evidence— hearsay—officer testimony—drug neighborhood—no plain error**

The trial court did not commit plain error in a delivery of a counterfeit controlled substance case by allowing an officer to characterize the neighborhood where the drug transaction allegedly occurred as a "high drug location" and an "open air market for drugs." It was unlikely that the jury's verdict would have been different absent this evidence in light of the substantial evidence of defendant's guilt.

6. **Sentencing— habitual felony—failure to redact statements from transcript of plea not prejudicial error**

Although the trial court erred in the habitual felon phase of a trial by refusing to redact challenged statements on the transcript of plea for defendant's predicate felony, defendant failed to demonstrate how the evidence prejudiced him given the overwhelming and uncontradicted evidence of the three prior felony convictions.

Appeal by defendant from judgment entered on or about 18 December 2008 by Judge Anderson Cromer in Superior Court, Forsyth County. Heard in the Court of Appeals 13 January 2010.

*Attorney General Roy A. Cooper, III, by Assistant Attorney General Richard A. Graham, for the State.*

*Appellate Defender Staples S. Hughes, by Assistant Appellate Defender Andrew DeSimone, for defendant-appellant.*

STROUD, Judge.

Jovar Lamar Ross ("defendant") appeals from his conviction for delivery of a counterfeit controlled substance and attaining the status of habitual felon. For the following reasons, we find no error.

## I. Background

The State's evidence tended to show that on 25 July 2007, Detective Rene Melley of the Winston-Salem Police Department was working undercover with other detectives in an attempt to purchase illegal narcotics in the area of Chandler Street near Old Greensboro Road in Winston-Salem. Around 6 p.m. in an unmarked police vehicle, Detective Melley drove past a man walking in the opposite direction down Chandler Street. After Detective Melley passed him, she looked in her rear-view mirror and noticed that the man was motioning for her to come back. Detective Melley stopped her vehicle, notified her surveillance, and then backed down the street to where the man was standing. Detective Melley testified that he "was wearing a brown t-shirt, long, dark blue jean shorts and a black, what we call, [a] skull cap." Detective Melley stopped her vehicle and rolled down the passenger side window. The man approached her vehicle, leaned inside the passenger side window, and asked, "What's up?" Detective Melley told him that she needed "a 20." She explained that "a 20 is a common street term used to describe 20 dollars worth of crack cocaine." The man then cupped his hand and gave detective Melley "an off-white rock-like substance that was similar in appearance to crack cocaine." Because of the flat shape of the substance, Detective Melley was skeptical as to whether it was actually crack cocaine. Later analysis by the State revealed that the substance was not crack cocaine. As Detective Melley handed the $20 to the man, her close cover, Detective Chris Diamont, drove past them and the man "pulled away from [her] window and began walking in the same direction that he was originally walking when [she] pulled through the area." Fifteen minutes after her interactions with defendant, Detective Melley was given defendant's name by another police officer at the staging area. She looked up defendant's name on the police department's computer database, which included a picture of defendant, and confirmed that defendant was the man from whom she had "just purchased the counterfeit substance" from on Chandler Street. At trial, Detective Melley identified the man from whom she had bought the substance on Chandler Street as defendant.

Detective Diamont testified that on 25 July 2007 he was working undercover as Detective Melley's close cover, which involved identifying anyone she would come in contact with. Detective Diamont confirmed at trial that he had seen defendant approach Detective Melley's vehicle and lean into the passenger side window, as he drove by the scene.

Following Detective Melley's and Detective Diamont's interactions and observations of defendant, Corporal Michael Knight with the Winston-Salem Police Department was called to respond to the area in a marked patrol vehicle. Based on a description given to him by other officers, Corporal Knight was able to identify and stop defendant. Defendant spoke with Corporal Knight and identified himself as Jovar Ross. Corporal Knight verified defendant's identification on the police department's computer database, which included a picture of defendant. Corporal Knight asked for consent to search defendant. Defendant consented to a search but Corporal Knight did not find anything on defendant. Corporal Knight then "radioed back the name and information that [he] received to the Vice and Narcotics Division." At trial, Corporal Knight identified the person that he stopped that day as defendant. Defendant was not arrested on 25 July 2007, when the transaction occurred, but in November of 2007 "at the culmination of [a] four month, ongoing investigation."

On 12 May 2008, defendant was indicted on one count of delivery of a counterfeit controlled substance and having attained the status of habitual felon. Defendant was tried during the 15 December 2008 Criminal Session of Superior Court, Forsyth County. Defendant did not testify at trial. On 17 December 2008, a jury found defendant guilty of delivering a counterfeit controlled substance and attaining the status of habitual felon. On 18 December 2008, the trial court sentenced defendant to a term of 107 to 138 months imprisonment. On 18 December 2008, defendant filed written notice of appeal.

## II. The Trial Court's Comments to the Jury

[1] Defendant first contends that the trial court's instructions and remarks to the jury had the effect of coercing "the deadlocked jury to reach a guilty verdict in violation of Article I, Section 24 of the North Carolina Constitution[.]" First, we note that defendant did not properly preserve this constitutional challenge to the trial court's jury instructions by raising this issue at trial, see State v. Gainey, 355 N.C. 73, 87, 558 S.E.2d 463, 473 ("Constitutional issues not raised and passed upon at trial will not be considered for the first time on appeal."), cert. denied, 537 U.S. 896, 154 L. Ed. 2d 165 (2002). However, in the alternative, defendant argues that despite his failure to make a timely argument or objection to the trial court's instructions, a plain error analysis should apply to his argument that the trial court's comments were coercive.

The trial transcript shows that the trial court gave defense counsel the opportunity to make objections regarding his comments to the jury,

after sending the jury back for further deliberations, but no objections were made. Therefore, defendant did not properly preserve this issue for appellate review by presenting to the trial court "a timely request, objection or motion stating the specific grounds for the ruling" and "obtain[ing] a ruling upon the party's request, objection or motion." N.C.R. App. P. 10(b)(1). However, North Carolina Rule of Appellate Procedure 10(c)(4) provides that

> [i]n criminal cases, a question which was not preserved by objection noted at trial and which is not deemed preserved by rule or law without any such action, nevertheless may be made the basis of an assignment of error where the judicial action questioned is specifically and distinctly contended to amount to plain error.

N.C.R. App. P. 10(c)(4). Our Supreme Court has noted that

> the plain error rule . . . is always to be applied cautiously and only in the exceptional case where, after reviewing the entire record, it can be said the claimed error is a *fundamental* error, something so basic, so prejudicial, so lacking in its elements that justice cannot have been done, or where [the error] is grave error which amounts to a denial of a fundamental right of the accused, or the error has resulted in a miscarriage of justice or in the denial to appellant of a fair trial or where the error is such as to seriously affect the fairness, integrity or public reputation of judicial proceedings or where it can be fairly said the instructional mistake had a probable impact on the jury's finding that the defendant was guilty.

*State v. Odom,* 307 N.C. 655, 660, 300 S.E.2d 375, 378 (1983) (internal quotation marks omitted) (quoting *United States v. McCaskill,* 676 F.2d 995, 1002 (4th Cir.), *cert. denied,* 459 U.S. 1018, 74 L. Ed. 2d 513, (1982)). Our Courts have consistently held that "plain error analysis applies only to jury instructions and evidentiary matters[.]" *State v. Wiley,* 355 N.C. 592, 615, 565 S.E.2d 22, 39-40 (2002), *cert. denied,* 537 U.S. 1117, 154 L. Ed. 2d 795 (2003); *See State v. Garcell,* 363 N.C. 10, 35, 678 S.E.2d 618, 634 (2009) ("Plain error analysis applies to evidentiary matters and jury instructions.") "[T]he defendant has the burden of showing that the error constituted plain error[.]" *State v. Bishop,* 346 N.C. 365, 385, 488 S.E.2d 769, 779 (1997).

Here, defendant attempts to make his plain error argument fit under the "jury instruction" category of error. The trial court made a series of statements in response to the jury's indications that they were dead-

locked on three separate instances. On 17 December 2008, the jury was charged and retired to deliberate at 10:28 a.m. The trial court received notice around 12:11 p.m. from the jury stating, "We are hung." The trial court brought the jury back into the courtroom and made the following statement to them:

> I got your note, the last one. Did I ever tell any of you that this job was easy? I'm going to ask that you go back and continue to work together to see if you can render a verdict in this case. At 12:30, we're going to stop, we'll bring you back in, and we're all going to go to lunch. And then if you haven't reached a verdict by then, we will come back.

> Now, it's up to me based on what I hear from you to determine whether or not the time has come where you cannot reach a verdict and I'm not yet at that point. All right? So I don't want you to go back there and spend all of your time trying to figure out how you can convince me you're at that point, but see if you can convince yourselves that you're unable to reach a verdict.

The trial court then told the jury in open court an anecdote relating to his interactions with a jury in a previous case:

> Now, I had a jury one time that deliberated for six days. Now, I didn't make them stay and work for six days just because I wasn't convinced that they couldn't reach a verdict, but every day they told me that even though they hadn't been able to reach a verdict, their foreperson said, 'Judge, I think we're making progress.'

> I asked the foreperson one day, I said,'Well, did you take a vote yesterday?'

> And he said, 'Yes, we did.'

> And I said, 'Well, I don't want to know how you voted but tell me what the number was,' and he said it was 6 to 6.

> And I said, 'Well, did you take a vote today.'

> And he said, 'Yes.'

> And I said, 'What was the vote?'

> 'Well, it was 6 to 6.'

> And I said to him, 'Well, then how are you making progress?'

And he said, 'It's not the same six.'

Now, let me just leave it at that . . . I have heard from you. I understand what your foreperson wrote down, that we all together acknowledge that this job is not as easy as some of you may have thought it might be, and I'm not suggesting that you did, but most of you haven't been jurors before. I'm acknowledging that you all paid attention to the proceedings, that you've all acknowledged that you've followed the law, and I think we all have to acknowledge that you understand what your duty is . . . .

The trial court again told the jury to go back for further deliberations; they would have lunch at 12:30; he would send a copy of the jury charge to them; and then sent the jury back to the jury room.

Around 2:44 p.m., the trial court received a second message from the jury, stating, "THIS JURY IS HUNG. [The vote]˙WAS 8-4 [but] NOW [is] 11-1. FINAL." (Emphasis in original.) In response, the trial court brought the jury back into the courtroom, and made the following comments:

I want to emphasize the fact that it's your duty to do whatever you can to reach a verdict. You should reason the matter over together. I'm not suggesting that you haven't, but I'm suggesting to you that you try again as reasonable men and women and to reconcile your differences, if you can, without the surrender of · conscientious convictions. But no juror should surrender his or her honest conviction as to the weight or effect of the evidence solely because of the opinion of his or her fellow jurors, or for the mere purpose of returning a verdict. I will let you resume your deliberations and see if you can once more reach a verdict. I'll hear back from you if you cannot, but I'm not declaring this hopelessly deadlocked.

The trial court then sent the jury back for further deliberations.

Around 3:29 p.m., the trial court received a third message from the jury which stated: "HUNG JURY. 11-1. (Deadlock)." (Emphasis in original.) In response, the trial court brought the jury back into the courtroom and stated:

We're going to take a ten minute recess, all of us, ten minutes, which will be 3:45. I'm going to ask that—no, I'm going to tell you all to be back in that jury room and continue your deliberations. But for the next ten minutes you're not to talk about this case with anyone. So at 3:45, you will continue your deliberations and

you'll either give me your verdict or I will be in touch with you shortly thereafter.

I understand your position thus far. I got your note. I understand it. It's short, to the point. It's direct, but I don't accept it yet. I only ask that you respect my decision as I respect yours. So be back at 3:45 to give yourselves just a complete break. If you need to take a walk, just don't walk too far. Be back in the jury room. And if you have to talk to anybody about directions or anything, make sure it's one of these folks that are charged with tending to your needs, but don't talk to anybody else about the case.

See you back at 3:45 p.m.

The trial court then gave the jury a short recess and then sent them back to the jury room for further deliberations at 3:48 p.m. At about 4:21 p.m., the trial court went back on the record and stated that

[w]ith the permission of the parties, I knocked on the [jury room] door at 4:20. They invited me in and I asked the foreperson, 'Are you making any progress?' And the foreperson . . . said, 'Little to none.' And I said, 'Little to none?' to which the other 11 jurors said, 'None.' So I'm at the point where I'm going to ask them to come in and declare this a mistrial. Any objections from either party?

Defense counsel made no objection. The State requested that the trial court wait until 4:30 p.m. to bring the jury back in; defense counsel consented to the State's request, and the trial court agreed to wait. While the trial court and the State were discussing other matters, the trial court received notice that the jury had reached a verdict. The jury then returned to the courtroom and delivered a verdict finding defendant guilty of delivering a counterfeit controlled substance. The trial court then proceeded to trial on the habitual felon charge, instructed the jury, and sent them to deliberate on this issue at 6:15 p.m. The trial court gave the jury the option of returning on the following day to deliberate or completing deliberations that night, as it was after 6:00 p.m. The jury sent a note informing the court that it would like to deliberate that night and asking for copies of State's exhibits 1, 2, and 3. At 6:42 p.m., the jury returned a guilty verdict on the habitual felon charge.

Defendant specifically contends that the trial court's "actions seriously undermined the fairness of the trial and had a probable impact on the jury's finding of guilt and thus amounted to plain error for which [defendant] must receive a new trial." However, as stated above, our plain error analysis is limited to reviewing "jury instructions and

evidentiary matters[.]" *Wiley*, 355 N.C. at 615, 565 S.E.2d at 39-40. Therefore, we must determine whether the trial court's comments following the jury's three notes to the trial court that they were at a deadlock were "instructions" in order to conduct a plain error analysis of defendant's argument.

Defendant first contends that the trial court gave coercive instructions to the jury following its first notice around 12:11 p.m. stating that, "We are hung." We note that the jury made no requests for instruction as to the applicable law or for additional evidence with this first notice, but only informed the trial court that they were having difficulty in reaching a decision. Accordingly, the only information communicated by the trial court to the jury following this first notice of deadlock was (1) that the decision of whether to send the jury back for deliberations was in the trial court's discretion; (2) the trial court had made the decision to send them back for further deliberations; and (3) they were going to recess for lunch at 12:30 p.m. The trial court followed this information with comments to encourage the jury to continue in its deliberations, followed by an illustrative anecdote, but did not give any further instructions.

The trial court's comments to the jury following its second notice of deadlock around 2:44 p.m. were in substance the instructions enumerated in N.C. Gen. Stat. § 15A-1235(b) commonly referred to as an *Allen* instruction. *See Allen v. United States*, 164 U.S. 492, 41 L. Ed 528 (1986). Our Supreme Court has held that the instructions in N.C. Gen. Stat. § 15A-1235(b) need not be read verbatim if "the trial court gives the substance of the four instructions . . . ." *State v. Fernandez*, 346 N.C. 1, 23, 484 S.E.2d 350, 364 (1997). However, defendant does not argue that this *Allen* instruction was given in error.

Defendant does argue that the trial court gave coercive instructions to the jury following its third notice that it was at a deadlock at 3:29 p.m. Again the trial court announced a recess, told the jurors not to discuss the case during the recess, and ruled that he would be sending the jury back for further deliberations. No further "jury instructions" were given. This Court has previously held that "[t]he purpose of an instruction is to clarify the issues for the jury and to apply the law to the facts of the case." *State v. Harris*, 47 N.C. App. 121, 123, 266 S.E.2d 735, 737 (1980). We note that in the trial court's comments following the jury's first and third indications that they were at a deadlock, the judge was not clarifying an issue for the jury or giving instruction as to how the law applied to the facts of the case. The trial court was merely announcing that it was within his discretion pursuant to N.C. Gen. Stat.

§ 15A-1235(c) to order the jury to continue deliberations and then making a ruling exercising that discretion on these two separate occasions. *See* N.C. Gen. Stat. § 15A-1235(c) ("If it appears to the judge that the jury has been unable to agree, the judge *may* require the jury to continue its deliberations . . . ." (emphasis added)); *State v. Goode*, 300 N.C. 726, 729, 268 S.E.2d 82, 84 (1980) ("Matters relating to the actual conduct of a criminal trial are left largely to the sound discretion of the trial judge so long as defendant's rights are scrupulously afforded him."). As the plain error analysis "is always to be applied cautiously and only in the exceptional case[,]" *Odom*, 307 N.C. at 660, 300 S.E.2d at 378, we decline to apply a plain error review to the trial court's comments in this situation, as they were not "jury instructions" but instead were discretionary rulings by the trial court.

Defendant also argues that it was plain error for the trial court to not give a second *Allen* instruction following the jury's third indication that they were at a deadlock. As defendant made no objection at trial and this is in regard to the trial court's instructions, *Wiley*, 355 N.C. at 615, 565 S.E.2d at 39-40, we review for plain error. Commonly referred to as an *Allen* instruction, *see Allen v. United States*, 164 U.S. 492, 41 L. Ed. 528 (1896), N.C. Gen. Stat. § 15A-1235(b) states that

the judge may give an instruction which informs the jury that:

(1) Jurors have a duty to consult with one another and to deliberate with a view to reaching an agreement, if it can be done without violence to individual judgment;

(2) Each juror must decide the case for himself, but only after an impartial consideration of the evidence with his fellow jurors;

(3) In the course of deliberations, a juror should not hesitate to reexamine his own views and change his opinion if convinced it is erroneous; and

(4) No juror should surrender his honest conviction as to the weight or effect of the evidence solely because of the opinion of his fellow jurors, or for the mere purpose of returning a verdict.

Our Supreme Court has held that "it is clearly within the sound discretion of the trial judge as to whether to give an instruction pursuant to N.C.G.S. § 15A-1235(c)." *State v. Cheek*, 351 N.C. 48, 88, 520 S.E.2d 545, 568 (1999) (citation and quotation marks omitted)). We have held that "[t]he purpose behind the enactment of N.C.G.S. § 15A-1235 was to avoid coerced verdicts from jurors having a difficult time reaching a

unanimous decision." *State v. Dexter*, 151 N.C. App. 430, 435, 566 S.E.2d 493, 497 (citation and quotation marks omitted), *aff'd per curiam*, 356 N.C. 604, 572 S.E.2d 782 (2002). "A trial court abuses its discretion if its determination is manifestly unsupported by reason and is so arbitrary that it could not have been the result of a reasoned decision." *State v. Cummings*, 361 N.C. 438, 447, 648 S.E.2d 788, 794 (2007) (citation and quotation marks omitted). "We determine whether a trial court abused its discretion by looking at the totality of the circumstances." *State v. Herrera*, 195 N.C. App. 181, 199, 672 S.E.2d 71, 83 (2009) (citing *Dexter*, 151 N.C. App. at 433, 566 S.E.2d at 496).

Looking at the totality of the circumstances, we note that the jury exited the courtroom following the trial court's first *Allen* instruction at 2:46 p.m. and sent to the trial court its third indication that it was at a deadlock at 3:29 p.m. It is difficult to see how another *Allen* instruction approximately 45 minutes after the first would have been necessary or helpful to the jury or that it would have had any impact on the outcome of the case. Also, the trial court made no additional comments to the jury that an *Allen* instruction would be helpful in clarifying. The trial court's only comments to the jury were to inform them of a recess, for them not to discuss the case during the recess, and for them to continue their deliberations after that recess. Therefore, we cannot say that the trial court abused its discretion by not giving a second *Allen* instruction, and if this was not error, it cannot be plain error. *Odom*, 307 N.C. at 660, 300 S.E.2d at 378. Accordingly, we overrule defendant's argument.

Defendant also argues that the trial court's *ex parte* contact with the jury also amounted to plain error. Defendant again made no objection to the trial court's contact with the jury at trial. However, as plain error is only applicable to issues regarding jury instructions and evidentiary matters, *Wiley*, 355 N.C. at 615, 565 S.E.2d at 39-40, we decline to extend plain error review to this argument, and defendant has not properly preserved this issue for our review. However, in addressing the general concern over *ex parte* contact with the jury, we have difficulty imagining circumstances in which it would be appropriate for the trial judge to enter a jury room during deliberations and to speak to the jurors regarding the case instead of bringing the jury back into the courtroom. *See State v. Payne*, 320 N.C. 138, 139-40, 357 S.E.2d 612, 612-13 (1987) (The Court granted the defendant a new trial when at the conclusion of jury selection in his capital trial, the trial court told the court reporter, "You may show that I am giving the jury a break and that I am going to administer my admonitions to them in the jury room[,]" as this *ex parte* contact by the trial judge was held to be a violation of the

defendant's constitutional right "to be present in person at every stage of his trial . . . because the defendant's presence at that time could have had a reasonably substantial relation to his ability to present a full defense." (citations omitted)). *But see State. v. Cunningham*, 344 N.C. 341, 354, 474 S.E.2d 772, 777 (1996) (The Court held no error when during jury selection, the trial judge sent the jurors being examined from the courtroom; because "[t]here was a shortage of deputies in the courtroom," the trial judge led the prospective jurors to their room but "did not speak to any of the prospective jurors while she was leading them to their room.") Under the circumstances presented here, there does not appear to have been any reason for the trial judge to visit the jury room during deliberations, rather than addressing the jurors in open court in the usual manner. We can find no North Carolina case addressing a trial judge's entry into a jury room during deliberations for the purpose of inquiring as to the jury's progress, but we agree with the opinion of the Minnesota Supreme Court in *State v. Mims*, 306 Minn. 159, 235 N.W.2d 381 (1975) as to the influence exerted by a trial judge's uninvited entrance into the jury room during deliberations:

> The trial judge, as the neutral factor in the interplay of our adversary system, is vested with the responsibility to ensure the integrity of all stages of the proceedings. This pervasive responsibility includes avoidance of both the reality and the appearance of any impropriety by so directing and guiding the proceedings as to afford the jury fair and independent opportunity to reach an impartial result on the issue of guilt. Thus, the trial judge's position in performing his role and function before submission of the case is a powerful one and makes him an imposing figure in the minds of the jurors. Called upon to perform unaccustomed duties in strange surroundings, the average juror is very sensitive to any hint or suggestion by the judge-however proper the judge's conduct. When during the judge's instructions it is impressed upon the jurors that they alone are the exclusive judges of the facts and the credibility of the witnesses, and that no act, word, sign, gesture, or inflection of voice by him is to influence their deliberations, the reality of the jury's independent function emerges. The withdrawal of the jury into a separate room, the administration of the oath to their custodians the bailiffs, the traditionally locked door, and other safeguards which prevent any intrusion during deliberations, all serve to emphasize meaningfully the independence of the jury's final, collective, decisional process and to create an atmosphere in which any incorrect notions jurors may have that they are to be influenced by the judge might be removed.

In view of the judge's dominant role during earlier stages of the trial, an uninvited entrance into the sanctity of the jury room for any purpose offends the integrity of the proceedings and risks influencing the jury's decisional process in some degree, however difficult to define or impossible to measure. At the very least, such unwarranted entrance disrupts the jury's deliberations, intrudes upon their independence, and transgresses the carefully drawn lines of demarcation between the functions of the trial judge and the functions of the jury. When such an intrusion occurs, we believe there is a significant interference with the orderly decisional process, and prejudice to the process results by the implication that the judge has the prerogative of entering the jury room and there exercising the same dominant authority he possesses in the courtroom.

*Id.* at 168-69, 235 N.W.2d at 387-88. Accordingly, we admonish the trial court that it should refrain from entering the jury room during deliberations to discuss the jury's progress to avoid the possibility of improperly influencing the jury and to avoid disruptions in the juror's deliberation process.

### III. Violations of N.C. Gen. Stat. § 15A-1234(c)

**[2]** Defendant next contends that the reason for his lack of objection or a request declaration of mistrial based upon the trial court's comments following the jury's three indications that they were at a deadlock was that "the trial court violated its statutory duties under N.C. Gen. Stat. § 15A-1234(c) to 'inform the parties generally of the instructions [it] intends to give' and afford them an opportunity to be heard." N.C. Gen. Stat. § 15A-1234(c) (2007) states that

[b]efore the judge gives additional instructions, he must inform the parties generally of the instructions he intends to give and afford them an opportunity to be heard. The parties upon request must be permitted additional argument to the jury if the additional instructions change, by restriction or enlargement, the permissible verdicts of the jury. Otherwise, the allowance of additional argument is within the discretion of the judge.

N.C. Gen. Stat. § 15A-1446(a) (2007) states that in criminal cases an "error may not be asserted upon appellate review unless the error has been brought to the attention of the trial court by appropriate and timely objection or motion[,]" and subsection (b) states that "[f]ailure to make an appropriate and timely motion or objection constitutes a

waiver of the right to assert the alleged error upon appeal[.]"[1] N.C. Gen. Stat. § 15A-1446(d) enumerates specific grounds which "may be the subject of appellate review even though no objection, exception or motion has been made in the trial division[,]" one of which includes "(12) Rulings and orders of the court, not directed to the admissibility of evidence during trial, when there has been no opportunity to make an objection or motion." However, contrary to defendant's argument, the trial transcript indicates that following the trial court's above comments to the jury regarding its deliberations, the trial court gave defense counsel the opportunity to make objections each time out of the presence of the jury and no objections were made by defense counsel. Therefore, defendant's argument does not fit within the exception enumerated in N.C. Gen. Stat. § 15A-1446(d)(12). By failing to make a timely objection at trial based on N.C. Gen. Stat. § 15A-1234(c), defendant has waived this argument on appeal. *See* N.C. Gen. Stat. § 15A-1446(b); N.C.R. App. P. 10(b)(1).

Defendant also argues for review pursuant to N.C. Gen. Stat. § 15A-1443(a). However, review pursuant to N.C. Gen. Stat. § 15A-1443(a) is limited to those errors preserved by a "timely objection." *State v. Parker*, 354 N.C. 268, 290, 553 S.E.2d 885, 901 (2001), *cert. denied*, 535 U.S. 1114, 153 L. Ed. 2d 162 (2002). Here, as stated above, defendant did not make a timely objection to any of the trial court's comments or instructions to the jury and has not preserved review pursuant to N.C. Gen. Stat. § 15A-1443(a). Defendant also makes no argument as to plain error and therefore waives his right to plain error review on this issue. *See State v. Harrington*, 171 N.C. App. 17, 32, 614 S.E.2d 337, 349 (2005) ("[Defendant] does not argue plain error, and therefore waives his right to plain error review.") Accordingly, defendant has not properly preserved this issue for appellate review.

IV. Violation of N.C. Gen. Stat. § 15A-1233(a)

[3] Defendant argues next that following the jury's request for State's exhibit 3 during deliberation, the trial court, in sending the exhibit back to the jury, in error instructed the bailiff to deliver the exhibit to the jury room "with the instruction that we need that back[,]" without bringing the jury back to the courtroom for that instruction in violation of N.C. Gen. Stat. § 15A-1233(a). Defendant, relying on *State v. Ashe*, 314 N.C. 28, 331 S.E.2d 652 (1985), argues that by not bringing the jury back to the courtroom as required by N.C. Gen. Stat. § 15A-1233(a), the trial court "risked miscommunication of its instruction" if the bailiff "inac-

---

1. *See also* N.C.R. App. P. 10(b)(1).

curately relayed the instruction to [defendant's] detriment." (Quotation marks omitted.)

First, we note that defendant failed to make an objection in regard to this statutory violation at trial, and ordinarily this failure would result in waiver of defendant's argument on appeal. *See* N.C. Gen. Stat. § 15A-1446(b); N.C.R. App. P. 10(b)(1); *Parker*, 354 N.C. at 290, 553 S.E.2d at 901. However, our Supreme Court has held that when a trial court commits a statutory violation of N.C. Gen. Stat. § 15A-1233(a) "and a defendant is prejudiced thereby, the right to appeal the court's action is preserved, notwithstanding defendant's failure to object at trial." *Ashe*, 314 N.C. at 39, 331 S.E.2d at 659. N.C. Gen. Stat. § 15A-1233(a) (2007) states that

> [i]f the jury after retiring for deliberation requests a review of certain testimony or other evidence, the jurors must be conducted to the courtroom. The judge in his discretion, after notice to the prosecutor and defendant, may direct that requested parts of the testimony be read to the jury and may permit the jury to reexamine in open court the requested materials admitted into evidence. In his discretion the judge may also have the jury review other evidence relating to the same factual issue so as not to give undue prominence to the evidence requested.

As noted by defendant, the Court in *Ashe* addressed the situation where the trial court had the jury foreman relay instructions back to the jury in the jury room. In *Ashe*, the jury foreman returned to the courtroom while the jury was deliberating, whereupon the following exchange took place:

> THE COURT: Mr. Foreman, the bailiff indicates that you request access to the transcript?
>
> FOREMAN: We want to review portions of the testimony.
>
> THE COURT: I'll have to give you this instruction. There is no transcript at this point. You and the other jurors will have to take your recollection of the evidence as you recall it and as you can agree upon that recollection in your deliberations.

*Ashe*, 314 N.C. at 33, 331 S.E.2d at 655-56. The defendant was convicted and appealed. *Id.* at 29, 331 S.E.2d at 652. On appeal, the defendant argued that "the trial court erred in failing to exercise its discretion in determining whether the jury could review the evidence and in not having all jurors summoned to the courtroom so that his response could

be communicated firsthand to them all rather than to the foreman alone." *Id.* at 33, 331 S.E.2d at 656. The Supreme Court noted that N.C. Gen. Stat. § 15A-1233(a)

> imposes two duties upon the trial court when it receives a request from the jury to review evidence. First, the court must conduct all jurors to the courtroom. Second, the trial court must exercise its discretion in determining whether to permit requested evidence to be read to or examined by the jury together with other evidence relating to the same factual issue . . . . Insofar as the statute requires the trial court to summon all jurors to the courtroom, it is a codification of a long-standing practice in the trial courts of this state.

*Id.* at 34, 331 S.E.2d at 656. The Supreme Court went on to hold that N.C. Gen. Stat. § 15A-1233,

> requires all jurors to be returned to the courtroom when the jury "requests a review of certain testimony or other evidence." We are satisfied the statute means that all jurors must be present not only when the request is made, but also when the trial court responds to the request, whatever that response might be.

*Id.* at 36, 331 S.E.2d at 657. By application of this rule, the Court held that "for the trial court in this case to hear the jury foreman's inquiry and to respond to it without first requiring the presence of all jurors was an error in violation of N.C.G.S. § 15A-1233." *Id.* The Court further explained that

> [o]ur jury system is designed to insure that a jury's decision is the result of evidence and argument offered by the contesting parties under the control and guidance of an impartial judge and in accord with the judge's instructions on the law. All these elements of the trial should be viewed and heard simultaneously by all twelve jurors. To allow a jury foreman, another individual juror, or anyone else to communicate privately with the trial court *regarding matters material to the case* and then to relay the court's response to the full jury is inconsistent with this policy. The danger presented is that the-24-person, even the jury foreman, having alone made the request of the court and heard the court's response firsthand, may through misunderstanding, inadvertent editorialization, or an intentional misrepresentation, inaccurately relay the jury's request or the court's response, or both, to the defendant's detriment.

Then, each juror, rather than determining for himself or herself the import of the request and the court's response, must instead rely solely upon their spokesperson's secondhand rendition, however inaccurate it may be.

*Id.* (Emphasis added.)

Here, the jury made a request for evidence to the trial court during deliberations.

THE COURT: Let the record reflect the jury has asked a question and made a request actually, and that is may they see the picture of the accused, which was Exhibit–was it 3?

THE STATE: I'd have to look. I'm sorry.

DEFENSE COUNSEL: Yes, Your Honor.

THE COURT: I think it was State's Exhibit Number 3. Does anyone have a question?

DEFENSE COUNSEL: No objection, Your Honor

THE STATE: No objection.

THE COURT: Nor does the Court have any. So I want to ask that it be given to them with the instruction that *we need that back.*

THE BAILIFF: Okay.

(Emphasis Added.) As the trial court did not bring the jury back into the courtroom for the jury's request of evidence and its ruling on that request, it technically violated the N.C. Gen. Stat. § 15A-1233(a) mandate that "for deliberation requests a review of certain testimony or other evidence, the jurors must be conducted to the courtroom." *See Ashe,* 314 N.C. at 36, 331 S.E.2d at 657. However, we fail to see how that the trial court's relayed instruction was prejudicial to defendant. In *Ashe,* the trial court allowed a communication "regarding matters material to the case" when he instructed the jury foreman to tell the other jurors that "[t]here is no transcript at this point. You and the other jurors will have to take your recollection of the evidence as you recall it and as you can agree upon that recollection in your deliberations." *Ashe,* 314 N.C. at 33, 331 S.E.2d at 655-56. In contrast, here, we cannot say that "we need that back" was a communication "regarding matters material to the case" as it did not address issues regarding the recollection of evidence during deliberations, like *Ashe,* or any other matter relevant to the jury's deliberations but was merely to inform the jurors that the

court wanted the exhibit returned to the court after the jury was finished reviewing it. Unlike the court in *Ashe*, the trial court here did not ask the jury foreman to relay the message but directed the bailiff to deliver the exhibit and to inform the jury to send it back. Unlike a jury foreman, the bailiff is a sworn officer of the court whose duties normally include conducting the jury to and from the jury room and conveying certain communications between the trial court and the jury. We cannot discern how the bailiff's delivery of the exhibit to the jury, with the instruction that it would need to be returned to the trial court, could be detrimental to defendant's case, and, accordingly, we hold that the trial court's error was not prejudicial to defendant. *See Ashe*, 314 N.C. at 39, 331 S.E.2d at 659.

### V. Violation of N.C. Gen. Stat. § 15A-1221(b)

**[4]** Defendant next contends that in violation of N.C. Gen. Stat. § 15A-1221(b) the trial court permitted the State to read a portion of defendant's indictment to the jury. Defendant argues for review pursuant to N.C. Gen. Stat. § 15A-1443(a). However, defendant has waived this argument because he failed to object to the State's introduction of this evidence at trial, pursuant to N.C.R. App. P. 10(b)(1), N.C. Gen. Stat. § 15A-1446, or N.C. Gen. Stat. § 15A-1443(a), *see Parker*, 354 N.C. at 290, 553 S.E.2d at 901, and defendant raises no argument as to plain error. *See Harrington*, 171 N.C. App. at 32, 614 S.E.2d at 349. Accordingly, defendant's argument is not properly preserved for our review.

### VI. Evidence Regarding the Character of the Neighborhood

**[5]** Defendant next contends that the trial court committed plain error by allowing State's witness Officer Melley to characterize the neighborhood where the drug transaction allegedly occurred as a "high drug location" and an "open air market for drugs[,]" as these statements amounted to inadmissible hearsay and "probably affected the outcome because the jury had a hard time rendering a unanimous verdict." As defendant did not object to the introduction of this evidence at trial, we review this evidentiary argument under a "plain error" standard of review. *See* N.C.R. App. P. 10(c)(4); *Odom*, 307 N.C. at 660, 300 S.E.2d at 378.

Even assuming *arguendo* that it was error for the trial court to allow the introduction of the detective's testimony characterizing the neighborhood, we conclude that it did not rise to the level of plain error, as the record in the case *sub judice* contains overwhelming evidence of defendant's guilt. Defendant was convicted of delivering a counterfeit

controlled substance pursuant to N.C. Gen. Stat. § 90-95(a)(2) (2007), which states that it is unlawful for any person "To create, sell or deliver, or possess with intent to sell or deliver, a counterfeit controlled substance[.]" N.C. Gen. Stat. § 90-95(a)(2) (2007). According to N.C. Gen. Stat. § 90-87 "counterfeit controlled substance" means

b. Any substance which is by any means intentionally represented as a controlled substance. It is evidence that the substance has been intentionally misrepresented as a controlled substance if the following factors are established:

1. The substance was packaged or delivered in a manner normally used for the illegal delivery of controlled substances.

2. Money or other valuable property has been exchanged or requested for the substance, and the amount of that consideration was substantially in excess of the reasonable value of the substance.

3. The physical appearance of the tablets, capsules or other finished product containing the substance is substantially identical to a specified controlled substance.

N.C. Gen. Stat. § 90-87 (2007)[2]. In the context of the crimes enumerated in N.C. Gen. Stat. § 90-95, "[a] sale is a *transfer* of property for a specified price payable in money." *State v. Creason*, 313 N.C. 122, 129, 326 S.E.2d 24, 28 (1985). Here, Detective Melley testified that she gave defendant $20 and defendant handed her a substance that he represented was crack cocaine. Detective Melley testified that the substance was handed to her not packaged because "[t]ypically, when you're just buying a single rock of crack cocaine, it is not packaged, though it can be; but more frequently than not it's not packaged. It's just one single rock that's handed[.]" Detective Melley testified that since the substance was not cocaine it had "no value[,]" even though she paid $20 for it. Detective Melley described this substance as "an off-white rock-

---

2. N.C. Gen. Stat. § 90-87(a) addresses substances in which "the container or labeling of which, without authorization, bears the trademark, trade name, or other identifying mark, imprint, number, or device, or any likeness thereof, of a manufacturer, distributor, or dispenser other than the person or persons who in fact manufactured, distributed, or dispensed such substance and which thereby falsely purports, or is represented to be the product of, or to have been distributed by, such other manufacturer, distributor, or dispenser[.]" Here, there was no evidence presented that the substance that Detective Melley received from defendant contained any "trademark, trade name, or other identifying mark, imprint, number, or device[,]" and therefore, this subsection is not relevant to this case.

like substance that was similar in appearance to crack cocaine." Defendant was also identified at trial by Detective Melley and Detective Diamont as the person that sold the counterfeit crack to Detective Melly. Corporal Knight also identified defendant as the person he stopped and searched based on a description from Detective Melley. In light of the substantial evidence of defendant's guilt, we find it unlikely that the jury's verdict would have been different if the evidence as to the nature of the neighborhood had been excluded and so we conclude defendant has failed to show plain error.

### VII. Violations of North Carolina Rules of Evidence 401 and 403

[6] Lastly, defendant contends that the trial court erred in the habitual felon phase of his trial by refusing to redact on the transcript of plea for defendant's predicate felony case No. 01 CRS 54630, in which defendant was convicted of assault with a deadly weapon inflicting serious injury ("AWDWISI"). Defendant requested redaction of two questions and responses on the transcript of plea: "4.(a). Are you now under the influence of alcohol, drugs, narcotics, medicines, pills, or any other intoxicants?", to which defendant answered "yes" and question 4.(b) "When was the last time you used or consumed any such substances?", to which defendant answered, "today[.]" Defendant argues that the admission of this evidence was in violation of North Carolina Rules of Evidence 401 and 403 because "[e]vidence that [defendant] consumed a substance on the day he pled guilty to a predicate felony had no tendency to prove the only fact at issue: whether [defendant] was convicted of that offense[]" and "its admission was unduly prejudicial." At trial, defendant objected to the admission of this evidence and the trial court overruled his objection. Therefore, this argument is properly preserved for our review. *See* N.C.R. App. P. 10(b)(1).

In reviewing a trial court's ruling pursuant to Rule 401, we have previously noted that

[a]lthough the trial court's rulings on relevancy technically are not discretionary and therefore are not reviewed under the abuse of discretion standard applicable to Rule 403, such rulings are given great deference on appeal. Because the trial court is better situated to evaluate whether a particular piece of evidence tends to make the existence of a fact of consequence more or less probable, the appropriate standard of review for a trial court's ruling on relevancy pursuant to Rule 401 is not as deferential as the 'abuse of discretion' standard which applies to rulings made pursuant to Rule 403.

*State v. Tadeja,* 191 N.C. App. 439, 444, 664 S.E.2d 402, 407 (2008) (quoting *Dunn v. Custer,* 162 N.C. App. 259, 266, 591 S.E.2d 11, 17 (2004)). Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." N.C. Gen. Stat. § 8C-1, Rule 401 (2007). "[E]vidence is relevant if it has any logical tendency, however slight, to prove a fact in issue in the case." *Tadeja,* 191 N.C. App. at 444, 664 S.E.2d at 407 (quoting *State v. Hannah,* 312 N.C. 286, 294, 322 S.E.2d 148, 154 (1984)). "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." N.C. Gen. Stat. § 8C-1, Rule 403 (2007).

A person may be charged as a habitual felon if he has been convicted of or pled guilty to three felony offenses. N.C. Gen. Stat. § 14-7.1 (2007). For a habitual felon charge, the prior felony convictions of a defendant may be proven by stipulation of the parties or by the original, certified copy, or true copy of the court record of the prior felony conviction, pursuant to N.C. Gen. Stat. § 14-7.4. *State v. Gant,* 153 N.C. App. 136, 143, 568 S.E.2d 909, 913 (2002). "[T]he preferred method for proving a prior conviction includes the introduction of the judgment itself into evidence." *State v. Maynard,* 311 N.C. 1, 26, 316 S.E.2d 197, 211, *cert. denied,* 469 U.S. 963, 83 L. Ed. 2d 299 (1984).

Here, the State introduced a "certificate of true copy" of the judgment and commitment, but also introduced the magistrate's order (form AOC-CR-116), the indictment (form AOC-CR-122), an order for arrest (form AOC-CR-217), and the "transcript of plea" (form AOC-CR-300) from Forsyth County file No. 01 CRS 54630. There were various redactions on all of these documents, but the language on the "transcript of plea" which is the subject of defendant's argument here was not redacted. In its brief, the State does not attempt to demonstrate how evidence that the defendant had "used or consumed" "alcohol, drugs, narcotics, medicines, pills, or any other intoxicants" on the day defendant had entered his plea may be relevant to the issue to be determined by the jury as to defendant's status as a habitual felon. We agree that the challenged statements on the "transcript of plea" are irrelevant, as they do not have "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." *See* N.C. Gen. Stat. § 8C-1, Rule 401.

Although defendant is correct that his answers to questions 4(a) and 4(b) on the "transcript of plea" were irrelevant to the determination which the jury was to make in this case, which was confined to whether defendant had previously been convicted of three felonies, including AWDWISI in file No. 01 CR 54630, defendant has failed to demonstrate how this evidence prejudiced him. Our Supreme Court has held that

> [d]efendant bears the burden of proving the testimony was erroneously admitted and he was prejudiced by the erroneous admission. N.C.G.S. § 15A-1443(a) (1997). "The admission of evidence which is technically inadmissible will be treated as harmless unless prejudice is shown such that a different result likely would have ensued had the evidence been excluded." *State v. Gappins*, 320 N.C. 64, 68, 357 S.E.2d 654, 657 (1987).

*State v. Moses*, 350 N.C. 741, 762, 517 S.E.2d 853, 867 (1999), *cert. denied*, 528 U.S. 1124, 145 L. Ed. 2d 826 (2000). Defendant does not challenge the validity of any of the three predicate felony convictions which led to his habitual felon status and does not challenge the judgment and commitment orders from those felonies. Given the overwhelming and uncontradicted evidence of the three felony convictions, there is essentially no likelihood that a "different result . . . would have ensued[,]" *see id*, if the trial court had redacted "transcript of plea" questions 4(a) and (b) and/or defendant's answers to those questions. Defendant's argument is therefore without merit. Although other documents, such as a transcript of plea, could be used to prove a conviction, we agree that, as our Supreme Court stated, the "*preferred method* for proving a prior conviction includes the introduction of the judgment itself into evidence." *Maynard*, 311 N.C. at 26, 316 S.E.2d at 211 (emphasis added).

## VIII. Conclusion

For the foregoing reasons, we hold that defendant received a trial free from prejudicial error.

NO PREJUDICIAL ERROR.

Judges BRYANT and ELMORE concur.