STATE OF NORTH CAROLINA v. KINARD JULIUS OAKES

No. COA11-418

(Filed 20 March 2012)

### 1. Evidence— prior crimes or bad acts—incarceration—prejudice not demonstrated—no plain error

The trial court did not commit plain error in an assault with a deadly weapon inflicting serious injury case by admitting testimony that defendant had been incarcerated in the past and was associated with people involved with drugs. Even assuming, without deciding, that the admission of the testimony was erroneous, defendant failed to demonstrate that the error caused the jury to reach its verdict.

### 2. Sentencing— plea transcripts—habitual felon phase—prejudice not demonstrated—no plain error

The trial court did not commit plain error during the habitual felon phase of defendant's trial by admitting evidence of the plea transcripts for defendant's prior felony convictions. Since the

only issue in a habitual felon proceeding is whether the defendant has been convicted of or pled guilty to three felony offenses, there was essentially no likelihood that the jury would have reached any other verdict had the plea transcripts been excluded.

3. **Sentencing— assault with deadly weapon inflicting serious injury—presumptive range—seriousness of offense considered—criminal record considered—no error**

Defendant's argument that he was denied a fair sentencing hearing in an assault with a deadly weapon inflicting serious injury case because the trial court improperly considered the seriousness of the assault offense and gave too much weight to his criminal record was without merit. Defendant cited no authority, and the Court of Appeals found none, suggesting that a trial court may not take into account the seriousness of a crime and the defendant's criminal record in deciding where within a presumptive range a defendant's sentence should fall.

Appeal by defendant from judgment entered 28 September 2010 by Judge Ronald E. Spivey in Forsyth County Superior Court. Heard in the Court of Appeals 10 October 2011.

*Attorney General Roy Cooper, by Assistant Attorney General Linda Kimbell, for the State.*

*Appellate Defender Staples Hughes, by Assistant Appellate Defender David W. Andrews, for defendant-appellant.*

GEER, Judge.

Defendant appeals from his convictions of assault with a deadly weapon inflicting serious injury ("AWDWISI") and of attaining habitual felon status. Defendant primarily contends on appeal that the trial court committed plain error in admitting evidence that defendant had previously been in jail and that he associated with "drug boys." As defendant has not demonstrated that the jury probably would have reached a different verdict in the absence of that evidence, he has not established plain error.

## Facts

The State's evidence tended to show the following facts. Johnny Barnes was a resident of Eastgate Apartments, as was defendant. Barnes knew defendant by his nickname, which sounded something like "Dalp." On 5 October 2009, Barnes sold his coat to his friend

Charlie to get money to do his laundry. After finishing his laundry, Barnes went to look for Charlie because he had received only part of the money for the coat. Barnes found Charlie at defendant's apartment and was talking to him when defendant came to the door in what Barnes described as a rage.

Defendant told Barnes that he should not "be knocking on my door looking for nobody about no damn money." Barnes indicated to defendant that he did not want any trouble and then began walking back towards his apartment with Charlie. Barnes heard defendant "cussing," and defendant continued "in a rage." A moment later, someone told Barnes to turn around. As he turned, defendant stabbed him in the shoulder with a knife. Barnes collapsed about 30 feet from defendant's apartment and called an ambulance. He was taken to the hospital where he stayed for a week and a half.

Officer Kyle Wilson of the Winston-Salem Police Department was called out to investigate the incident. When Officer Wilson arrived on the scene, he found Barnes holding his side and bleeding from his chest. Although Barnes could only identify the person who stabbed him as "Dap," he identified defendant's apartment building as being where his assailant lived. Another officer who arrived later found blood in front of that building.

After speaking with Barnes, Officer Wilson went into defendant's apartment where he saw a steak knife by the kitchen sink that was wet. Officer Wilson subsequently spoke with Barnes at the hospital where he described his assailant as a black male with a heavy beard and mustache who had recently been in jail. Having canvassed the neighborhood and spoken with Barnes' friend Charlie, Officer Wilson obtained a warrant and arrested defendant.

Defendant was indicted for assault with a deadly weapon with intent to kill inflicting serious injury ("AWDWIKISI") and for being a habitual felon. The jury convicted him, however, of AWDWISI and of being a habitual felon. The trial court sentenced defendant to a presumptive-range term of 95 to 123 months imprisonment. Defendant timely appealed to this Court.

I

[1] Defendant first argues that the trial court committed plain error in admitting testimony (1) that defendant had been incarcerated in the past and (2) that he associated with people involved with drugs. The testimony regarding defendant's prior incarceration came from

both Barnes and Officer Wilson. During the cross-examination of Barnes, defendant's counsel elicited the following testimony:

Q.  Is that what you told the police officer?

A.  Told him what? I didn't know his real name. I went by the name as they called him.

Q.  Dop?

A.  Dalp [phonetic] or something. He'll tell you.

Q.  So it's Dalp?

A.  That's Kinard. But they called him something else down there. Because I was living down there, and he came like from just getting out of prison. I didn't know his full name.

Defendant made no objection or motion to strike with respect to this testimony.

Subsequently, during direct examination, Officer Wilson testified that Barnes "advised that he believed that the suspect had recently been in jail." At that point, defendant objected, but the trial court overruled the objection. Defendant concedes that his objection to Officer Wilson's answer was not sufficient to preserve the objection to the admission of the evidence that defendant had previously been in jail given his failure to object during Barnes' testimony. *See State v. Whitley*, 311 N.C. 656, 661, 319 S.E.2d 584, 588 (1984) ("[T]he defend-ant waived his right to raise on appeal his objection to the evidence. Where evidence is admitted over objection, and the same evidence has been previously admitted or is later admitted without objection, the benefit of the objection is lost.").

Consequently, defendant argues that the admission of the testimony about his incarceration constituted plain error. It is well established that " '[t]he plain error rule applies only in truly exceptional cases. Before deciding that an error by the trial court amounts to "plain error," the appellate court must be convinced that absent the error the jury probably would have reached a different verdict. In other words, the appellate court must determine that the error in question "tilted the scales" and caused the jury to reach its verdict convicting the defendant.' " *State v. Duke*, 360 N.C. 110, 138–39, 623 S.E.2d 11, 29–30 (2005) (internal citation omitted) (quoting *State v. Walker*, 316 N.C. 33, 39, 340 S.E.2d 80, 83 (1986)).

In this case, even assuming without deciding, that the admission of the above testimony was error, defendant has failed to demonstrate that the admission of this evidence caused the jury to reach its verdict. "The elements of AWDWISI are: (1) an assault, (2) with a deadly weapon, (3) inflicting serious injury, (4) not resulting in death." *State v. Jones*, 353 N.C. 159, 164, 538 S.E.2d 917, 922 (2000). The State presented ample evidence of each element and that defendant was the perpetrator.

Defendant asserts that the evidence against defendant was "weak" because the State did not corroborate Barnes' testimony with the testimony of Charlie and did not present the knife defendant allegedly used. Based on our review of the record, we find it highly unlikely that the jury would have rejected Barnes' testimony that defendant stabbed him.

Immediately after being stabbed and while awaiting transport to the hospital, Barnes identified defendant as his assailant by nickname and pointed to defendant's apartment building as where his assailant lived. Officer Wilson found blood on the front step of that building and a wet steak knife next to defendant's kitchen sink, suggesting it had just been washed. Barnes then specifically identified defendant at trial as the perpetrator. In the face of this evidence, defendant presents no explanation on appeal why a jury would find Barnes' identification of defendant less credible in the absence of the testimony about defendant's prior incarceration.

Defendant also appears to argue that because the State did not present testimony from a health care provider regarding Barnes' injury, the evidence of the seriousness of that injury was sufficiently weak that evidence of defendant's prior incarceration must have tipped the scales towards conviction. Given that Barnes was stabbed, both Officer Wilson and Barnes testified that Barnes was bleeding profusely, Barnes was hospitalized for more than a week, and Barnes required a breathing tube, we do not believe that defendant has shown that in the absence of the challenged testimony, the jury would have concluded that the injury was not serious. Defendant has, therefore, failed to show plain error regarding the admission of Barnes' statement that defendant had previously been in prison.

Second, defendant argues Barnes' testimony suggesting that defendant consorted with people involved with drugs constituted plain error. During Barnes' cross-examination, the following exchange took place:

Q.  [Charlie] wasn't at his uncle . . . in Apartment B?

A.  Not at the time. That's where he lives. That's where he was living at . . . one time. But at the house where I went to, that's where all the drug boys hung out at because—

[DEFENSE COUNSEL]: Objection, Judge. No question's before the witness.

A.  That's what they did.

THE COURT: Overruled

Q.  You're saying you did drugs over there?

A.  No. I'm saying that's where they did their drugs at.

We do not believe, given the State's evidence, that this testimony was any more likely to tip the scales for conviction than the testimony regarding defendant's prior incarceration. Consequently, defendant has also failed to establish that the admission of this testimony amounted to plain error.

## II

[2] Defendant next contends that the trial court committed plain error during the habitual felon phase of his trial in admitting evidence not only of the judgment and charging documents for defendant's prior felony convictions, but also the plea transcripts for those convictions. Defendant points out that those plea transcripts showed (1) that defendant had been given lenient sentences under prior plea agreements, (2) that he was ordered to undergo mental health counseling, and (3) that he had been intoxicated in the past—information irrelevant to whether he was convicted of the offenses set out in the habitual felon indictment.

Defendant contends that admission of his plea transcripts violated N.C. Gen. Stat. § 15A-1025 (2011), which provides that "[t]he fact that the defendant or his counsel and the prosecutor engaged in plea discussions or made a plea arrangement may not be received in evidence against or in favor of the defendant in any criminal or civil action or administrative proceedings." Because defendant did not object to the admission of the plea transcripts, he is limited to plain error review.

We agree with defendant that, at a minimum, this Court's opinion in *State v. Ross*, 207 N.C. App. 379, 700 S.E.2d 412 (2010), *disc. review*

*denied*, 365 N.C. 346, 717 S.E.2d 377 (2011), establishes that it was error to admit plea transcripts that had not been redacted to remove information not relevant to the habitual felon proceeding, such as defendant's prior drug use, mental health counseling, and lenient sentencing.[1] Nevertheless, this Court in *Ross* concluded that even though the defendant had preserved the issue for review, he did not show sufficient prejudice to warrant a new habitual felon hearing. *Id.* at 400, 700 S.E.2d at 426.

The Court pointed out that the defendant did not dispute that he had been previously convicted of the three felonies required for the jury to find he had attained habitual felon status. *Id.* 700 S.E.2d at 425-26. As a result, the Court held that "[g]iven the overwhelming and uncontradicted evidence of the three felony convictions, there [was] essentially no likelihood" that the jury would have reached a different result. *Id.* 700 S.E.2d at 426. *See also State v. Stitt*, 147 N.C. App. 77, 84-85, 553 S.E.2d 703, 708-09 (2001) (holding defend- ant had failed to prove prejudice as to admission of transcripts of plea to prove habitual felon status, particularly given their admission only during the habitual sentencing phase of defendant's trial where the only issue was whether he had been convicted of the underlying felonies).

In this case, although defendant did argue below that the exhibits were not self-authenticating, he did not dispute the fact that he had been convicted of the necessary predicate felonies. In addition, the State presented evidence of those convictions in the form of the information, warrant, transcript of plea, and judgment for each of the three felonies. Since the only issue in a habitual felon proceeding is whether the defendant has been convicted of or pled guilty to three felony offenses, *Ross*, 207 N.C. App. at 399, 700 S.E.2d at 425, we believe, just as this Court did in *Ross*, that there is essentially no likelihood that the jury would have reached any other verdict had the plea transcripts been excluded.

III

[3] Finally, defendant contends that he was denied a "fair sentencing hearing because the trial court improperly considered the seriousness of the assault offense and gave too much weight to his criminal record before sentencing him." During the sentencing hearing, the parties argued regarding the sufficiency of the State's evidence of

---

1. *Ross* does not specifically address whether the plea transcripts should have been excluded under N.C. Gen. Stat. § 15A-1025, and we do not address that issue here.

defendant's prior convictions. Defendant was willing to stipulate only to two convictions of possession of drug paraphernalia and contended that he was a prior record level two.

The trial court then determined that seven misdemeanor convictions should be included in calculating defendant's prior record level. After hearing further argument by counsel, the trial court announced:

> THE COURT: I'll try to take into account all the things argued by counsel, by the state, the seriousness of the current offense, his voluminous criminal history and record of a lot of misdemeanors. I'll also try to take into account what you said, the nature of the prior felonies that got him to this status of habitual felon, and the passage of time since his previous felony, and the things about Disability.
>
> And the Court considering all these things, Madam Clerk, again will find that he was convicted by the Jury of the Class E assault with a deadly weapon inflicting serious injury. The Court will enhance it to a Class C pursuant to the habitual felon status, prior record level 3; the Court having found seven prior record level points due to seven prior A-1 or 1 misdemeanors.

The trial court then sentenced defendant to a presumptive-range term of 95 to 123 months imprisonment.

Although a sentence within the statutory limits will be presumed regular and valid, such a presumption is not conclusive. *State v. Boone*, 293 N.C. 702, 712, 239 S.E.2d 459, 465 (1977). "If the record discloses that the [trial] court considered irrelevant and improper matter in determining the severity of the sentence, the presumption of regularity is overcome, and the sentence is in violation of [the] defendant's rights." *Id.* In *Boone*, our Supreme Court ordered a new sentencing hearing when the trial court improperly considered in sentencing the defendant's decision to reject a plea offer because the defendant "had the right to plead not guilty, and he should not and cannot be punished for exercising that right." *Id.* at 712-13, 239 S.E.2d at 465.

Here, defendant cites no authority—and we know of none—suggesting that a trial court may not take into account the seriousness of a crime and the defendant's criminal record in deciding where within a presumptive range a defendant's sentence should fall. The cases cited by defendant—*State v. Higson*, 310 N.C. 418, 312 S.E.2d 437

(1984); *State v. Blackwelder*, 309 N.C. 410, 306 S.E.2d 783 (1983); *State v. Chatman*, 308 N.C. 169, 301 S.E.2d 71 (1983); and *State v. Benfield*, 67 N.C. App. 490, 313 S.E.2d 198 (1984)—all address the finding of an aggravating factor to increase the sentence beyond the presumptive range. They do not address what is at issue in this case: whether a trial court may consider the seriousness of the crime and the defendant's record in deciding where, within the presumptive range, a defendant's sentence should fall.

The imposition of the minimum sentence under the sentencing guidelines is within the discretion of the trial court. N.C. Gen. Stat. § 15A-1340.17(c)(2) (2011) (emphasis added) provides that for the presumptive range, when "the sentence of imprisonment is neither aggravated or mitigated," then "any minimum term of imprisonment in that range is permitted . . . ." *See also State v. Parker*, 143 N.C. App. 680, 685-86, 550 S.E.2d 174, 177 (2001) ("The Structured Sentencing Act clearly provides for judicial discretion in allowing the trial court to choose a minimum sentence within a specified range."). If a trial court is free to choose "any" minimum term, we fail to see why a trial court should not be able to take into account the seriousness of the particular offense when exercising its discretion to decide which minimum term within the presumptive range for that class of offense and prior record level to impose.

No error.

Chief Judge MARTIN and Judge STROUD concur.