IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA24-276

Filed 5 March 2025

Martin County, Nos. 21 CRS 50171-73

STATE OF NORTH CAROLINA

v.

ERIC RUFFIN

Appeal by Defendant from Judgments entered 29 March 2023 by Judge Wayland J. Sermons, Jr. in Martin County Superior Court. Heard in the Court of Appeals 6 November 2024.

*Attorney General Jeff Jackson, by Assistant Attorney General Alexander H. Ward, for the State.*

*Shelly Bibb DeAdder for Defendant-Appellant.*

HAMPSON, Judge.

## **Factual and Procedural Background**

Eric Ruffin (Defendant) appeals from Judgments entered upon jury verdicts finding him guilty of Trafficking in Heroin by Sale of More than 4 but Less than 14 Grams of Heroin, Trafficking in Heroin by Delivery of More than 4 but Less than 14 Grams of Heroin, Trafficking in a Mixture Containing Heroin by Transporting More than 4 but Less than 14 Grams of a Mixture Containing Heroin, Trafficking in a Mixture Containing Heroin by Possession, Possession with Intent to Sell or Deliver

(PWISD) a Controlled Substance (Mixture Containing Heroin), Sale of Marijuana, and Delivery of Marijuana. The Record before us tends to reflect the following:

Defendant was charged with Trafficking in Heroin by Sale; Trafficking in Heroin by Delivery; Trafficking in Heroin by Manufacture; Trafficking in Heroin by Transportation; Trafficking in Heroin by Possession; Possession with Intent to Manufacture, Sell, and Deliver Heroin; Sale of Marijuana; and Delivery of Marijuana on or about 21 April 2021. Following presentation to a grand jury, the charge of Trafficking in Heroin by Manufacture was dismissed. Defendant was indicted for Trafficking in Heroin by Sale, Trafficking in Heroin by Delivery, Trafficking in Heroin by Transportation, Trafficking in Heroin by Possession, Trafficking in a Mixture Containing Heroin by Transportation, Trafficking in a Mixture Containing Heroin by Possession, PWISD a Controlled Substance (Heroin), Sale of Marijuana, and Delivery of Marijuana. On or about 8 August 2022, the State obtained a superseding indictment for PWISD a Controlled Substance (Mixture Containing Heroin) rather than PWISD a Controlled Substance (Heroin).

This matter came on for trial on 27 March 2023. At trial, the State presented evidence tending to show that on or about 8 March 2021, a confidential informant (CI) contacted Detective Justin Harrell of the Martin County Sheriff's Office to arrange a controlled buy of drugs from Defendant. Detective Harrell had used this CI numerous times over a five-year period. At the time of trial, Detective Harrell had been in law enforcement for nearly twelve years and in the narcotics division for nine

years.

On 8 March 2021, the CI sent a text message to Defendant stating he wanted buy seven grams of fentanyl "and some marijuana." Defendant quoted the CI a price of "$100 a gram for fentanyl" and "$35 for an eighth of an ounce of marijuana." Defendant then went to the CI's house and waited in his car. The CI paid Defendant $735 through his car window, and Defendant gave him two separate bags containing "the fentanyl and the marijuana." The two spoke briefly before Defendant left. Defendant was arrested shortly after leaving the scene. Police recovered the substances Defendant gave the CI, including a leafy green plant material, following the controlled buy.

Detective Harrell testified that based on his training and experience, the plant material appeared to be marijuana. Detective Harrell also testified to his observations during the conversation between the CI and Defendant via surveillance equipment. During that conversation, Detective Harrell heard Defendant discuss an "eighth"—a common shorthand for an amount of marijuana—and observed Defendant "rolling a marijuana blunt."

The State also called Lyndsay Cone, a forensic scientist for the North Carolina State Crime Laboratory (Crime Lab) in the drug chemistry section, as an expert witness in drug analysis and identification. Cone testified she used the Crime Lab's procedures to test the plant material and other substances seized and described those tests. Based on that testing, Cone concluded one substance was "plant material

belonging to the genus cannabis containing tetrahydrocannabinol [THC], concentration of cannabinoid not determined[.]" On cross-examination, Cone testified to the difference between marijuana and hemp, specifically that "in marijuana, the THC, the psychoactive ingredient, is very, very high, and the CBD is very low whereas in hemp they're reversed[.]" Additionally, Cone stated "at our lab we currently do not have the ability to distinguish between marijuana and hemp because that analysis requires what's called a quantitative analysis which is where you're measuring the percentages of what's present in the plant material[.]" Defense counsel then asked Cone whether the plant material she tested could have been hemp, to which she responded: "It's possible. Yes."

During the jury charge conference, Defendant requested the trial court add the following to the pattern jury instruction for the marijuana-related charges: "the term [marijuana] does not include hemp or hemp products." The trial court read the proposed instruction back to defense counsel who confirmed it was as requested. The trial court allowed Defendant's proposed instruction. Defendant did not otherwise object to the trial court's jury instructions.

On 29 March 2023, the jury returned verdicts finding Defendant guilty of Trafficking in Heroin by Sale of More than 4 but Less than 14 Grams of Heroin, Trafficking in Heroin by Delivery of More than 4 but Less than 14 Grams of Heroin, Trafficking in a Mixture Containing Heroin by Transporting More than 4 but Less than 14 grams of a Mixture Containing Heroin, Trafficking in a Mixture Containing

Heroin by Possession, PWISD a Controlled Substance (Mixture Containing Heroin), Sale of Marijuana, and Delivery of Marijuana. The trial court sentenced Defendant to a term of 70 to 93 months of imprisonment for Trafficking in Heroin by Sale and an additional term of 70 to 93 months of imprisonment for Trafficking in a Mixture Containing Heroin by Transportation to run *consecutively*.

Defendant was also sentenced to two terms of 70 to 93 months of imprisonment, one for Trafficking in Heroin by Delivery and the other for Trafficking in a Mixture Containing Heroin by Possession, set to run concurrently with the Trafficking in Heroin by Sale sentence. The trial court sentenced Defendant to a further 8 to 19 months of imprisonment for PWISD (Mixture Containing Heroin). The trial court consolidated the convictions for Sale of Marijuana and Delivery of Marijuana and sentenced Defendant to 8 to 19 months of imprisonment to run concurrently with his sentence for Trafficking in a Mixture Containing Heroin by Transportation. Defendant orally gave Notice of Appeal in open court on 29 March 2023.

## Issues

The issues on appeal are whether the trial court erred by: (I) denying Defendant's Motion to Dismiss his marijuana charges; (II) admitting Detective Harrell's testimony; (III) admitting Cone's expert testimony; (IV) instructing the jury using the pattern instruction and Defendant's requested instruction verbatim; (V) sentencing Defendant on consolidated marijuana offenses concurrently with a longer

sentence; and (VI) considering the seriousness and impact of Defendant's trafficking heroin offenses in sentencing.

## Analysis

I.     Detective Harrell's Testimony

Defendant contends the trial court plainly erred by allowing Detective Harrell to testify that the plant material in question was marijuana. Defendant did not object to Detective Harrell's testimony at trial. Thus, our review is limited to plain error. N.C.R. App. P. 10(a)(4) (2023) ("In criminal cases, an issue that was not preserved by objection noted at trial and that is not deemed preserved by rule or law without any such action nevertheless may be made the basis of an issue presented on appeal when the judicial action questioned is specifically and distinctly contended to amount to plain error.").

"For error to constitute plain error, a defendant must demonstrate that a fundamental error occurred at trial." *State v. Lawrence*, 365 N.C. 506, 518, 723 S.E.2d 326, 334 (2012) (citation omitted). Further, "[t]o show that an error was fundamental, a defendant must establish prejudice—that, after examination of the entire record, the error 'had a probable impact on the jury's finding that the defendant was guilty.'" *Id.* (quoting *State v. Odom*, 307 N.C. 655, 660, 300 S.E.2d 375, 378 (1983) (citation omitted)). Thus, plain error is reserved for "the exceptional case where, after reviewing the entire record, it can be said the claimed error is a '*fundamental* error, something so basic, so prejudicial . . . that justice cannot have

been done,' or 'where [the error] is grave error which amounts to a denial of a fundamental right of the accused[.]' " *Odom*, 307 N.C. at 660, 300 S.E.2d at 378 (quoting *United States v. McCaskill*, 676 F.2d 995, 1002 (4th Cir. 1982)) (emphasis in original).

Under our statutes, at the time of the underlying incident, marijuana was defined as "all parts of the plant of the genus Cannabis . . . not includ[ing] industrial hemp[.]" N.C. Gen. Stat. § 90-87(16) (2021). Industrial hemp was defined under the Industrial Hemp Act as any variety of cannabis which contained no more than 0.3% of THC and was "cultivated or possessed by a grower licensed by the [North Carolina Industrial Hemp] Commission." N.C. Gen. Stat. § 106-568.51(7) (2022).[1]

Our Rules of Evidence provide a lay witness' testimony "in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness and (b) helpful to a clear understanding of his testimony or the determination of a fact in issue." N.C. Gen. Stat. § 8C-1, Rule 701 (2023). Generally, "in prosecutions involving controlled substances, the State bears the burden of proving the substance's identity beyond a reasonable doubt." *State v. Teague*, 286 N.C. App. 160, 184, 879 S.E.2d 881, 899 (2022) (citing *State v. Ward*, 364 N.C. 133, 147, 694 S.E.2d 738, 747 (2010)). However, this Court has consistently held

---

[1] The Industrial Hemp Act expired on 30 June 2022; however, the General Assembly added the same definition of hemp to N.C. Gen. Stat. § 90-87(13a), which maintained the legal status of hemp while removing a licensure requirement. Further, the General Assembly modified the definition of "marijuana" to not include hemp. N.C. Gen. Stat. § 90-87(16) (2023).

that "a police officer experienced in the identification of marijuana may testify to his visual identification of evidence as marijuana[.]" *State v. Garnett*, 209 N.C. App. 537, 546, 706 S.E.2d 280, 286 (2011); *see also State v. Johnson*, 225 N.C. App. 440, 455, 737 S.E.2d 442, 451 (2013) ("It is well established that officers with proper training and experience may opine that a substance is marijuana."); *State v. Jones*, 216 N.C. App. 519, 526, 718 S.E.2d 415, 421 (2011) ("[O]ur case law provides that an officer may testify that the contraband seized was marijuana based on visual inspection alone.").

Here, Detective Harrell testified to his training and experience at trial. Detective Harrell testified that at the time of the trial, he had worked for the Martin County Sheriff's Office for nearly twelve years and had worked in the narcotics division for nine years. In that role, he investigated narcotics-related offenses, the transportation of illegal narcotics, and worked with confidential informants. He also stated that he completed yearly narcotics training. After testifying to the events leading up to Defendant's arrest, Detective Harrell testified that, based on his training and experience, the plant material appeared to be marijuana. Consistent with our caselaw, this identification was properly admitted because Detective Harrell is a law enforcement officer with proper training and experience in narcotics.

Defendant points to *State v. Ward*, 364 N.C. 133, 694 S.E.2d 738 (2010), arguing a law enforcement officer's visual identification is no longer reliable since our General Assembly legalized hemp because hemp and marijuana are

indistinguishable without a chemical analysis. In *Ward*, our Supreme Court held "the burden is on the State to establish the identity of any alleged controlled substance that is the basis of the prosecution. Unless the State establishes before the trial court that another method of identification is sufficient to establish the identity of the controlled substance beyond a reasonable doubt, some form of scientifically valid chemical analysis is required." *Id.* at 147, 694 S.E.2d at 747. We believe *Ward* is distinguishable from the case at hand.

First, we note our Supreme Court in *Ward* expressly stated: "This holding is limited to North Carolina Rule of Evidence 702." *Id.* Rule 702 governs expert testimony only. Thus, the standard for lay opinion testimony under Rule 701— including Detective Harrell's testimony—is unchanged in light of *Ward*. Moreover, the contraband substances at issue in *Ward* were pharmaceuticals, not marijuana. *Id.* at 135-39, 694 S.E.2d at 740-42. And our cases following *Ward* have affirmed that law enforcement officers may still offer lay opinion testimony identifying a substance as marijuana. *E.g.*, *Garnett*, 209 N.C. App. at 546, 706 S.E.2d at 286; *Johnson*, 225 N.C. App. at 455, 737 S.E.2d at 451; *State v. Mitchell*, 224 N.C. App. 171, 179, 735 S.E.2d 438, 444 (2012); *State v. Cox*, 222 N.C. App. 192, 198, 731 S.E.2d 438, 443 (2012), *rev'd on other grounds*, 367 N.C. 147, 749 S.E.2d 271 (2013); *Jones*, 216 N.C. App. 519, 526, 718 S.E.2d 415, 421 (2011). *But see State v. Highsmith*, 285 N.C. App. 198, 199, 877 S.E.2d 389, 390 (2022) (acknowledging the emergence of hemp, "another plant that looks and smells the same as illegal marijuana but is legal in North

Carolina," has "brought about speculation and discussion surrounding the ability of law enforcement to use the sight and scent traditionally associated with marijuana" to establish probable cause). Consistent with this caselaw, we conclude the admission of Detective Harrell's opinion testimony identifying the plant material as marijuana was not error. Therefore, the admission was not plain error.

II. <u>Expert Testimony</u>

Similarly, Defendant contends the trial court's admission of Cone's testimony as an expert witness to identify the plant material in question as marijuana was plain error. Defendant did not object to Cone's testimony at trial. Thus, we again apply the plain error standard of review. *See Lawrence*, 365 N.C. at 518, 723 S.E.2d at 334.

Rule of Evidence 702 governs the admissibility of expert testimony. This Rule provides:

> (a) If scientific, technical or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion, or otherwise, if all of the following apply:
>
> (1) The testimony is based upon sufficient facts or data.
>
> (2) The testimony is the product of reliable principles and methods.
> (3) The witness has applied the principles and methods reliably to the facts of the case.

N.C. Gen. Stat. § 8C-1, Rule 702(a) (2023). Defendant contends none of the three criteria were satisfied in this case.

As our Supreme Court has noted, North Carolina adopted the federal *Daubert* standard for determining whether to admit expert opinion testimony. *State v. McGrady*, 368 N.C. 880, 888, 787 S.E.2d 1, 8 (2016). Consistent with this standard, a trial court applies the three-pronged reliability test set forth in Rule 702(a). "The primary focus of the inquiry is on the reliability of the witness's principles and methodology, not on the conclusions that they generate." *Id.* at 890, 787 S.E.2d at 9 (citations and quotation marks omitted). "The precise nature of the reliability inquiry will vary from case to case depending on the nature of the proposed testimony. In each case, the trial court has discretion in determining how to address the three prongs of the reliability test." *Id.* (citing *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 152-53, 119 S. Ct. 1167, 1176, 143 L. Ed. 2d 238 (1999)). "Trial courts enjoy 'wide latitude and discretion when making a determination about the admissibility of [expert] testimony.' " *State v. King*, 366 N.C. 68, 75, 733 S.E.2d 535, 539-40 (2012) (quoting *State v. Wise*, 326 N.C. 421, 432, 390 S.E.2d 142, 149 (1990), *cert. denied*, 498 U.S. 853, 111 S. Ct. 146, 112 L. Ed. 2d 113 (1990)).

Defendant points to *State v. Teague* for the proposition that the identity of a controlled substance must be proven by "scientifically valid chemical analysis and not mere visual inspection." 286 N.C. App. 160, 184, 879 S.E.2d 881, 899 (2022) (quoting *Ward*, 364 N.C. at 142, 694 S.E.2d at 744). Yet the next sentence of that opinion reads: "However, marijuana has long been excepted from this rule." *Id.* Further, "[n]otwithstanding *Ward*, this Court has 'specifically noted that marijuana is

distinguishable from other controlled substances that require more technical analyses for positive identification. In keeping with a long line of cases, we [have repeatedly] held . . . that the State is not required to submit marijuana for chemical analysis.' " *Id.* (quoting *State v. Mitchell*, 224 N.C. App. 171, 179, 735 S.E.2d 438, 444 (2012) (citation omitted), *appeal dismissed and disc. review denied*, 366 N.C. 578, 740 S.E.2d 466 (2013)) (alterations in original). Consistent with our caselaw then, the State was not required to submit the plant material for chemical analysis. The question remaining is whether, although the State did not need to submit a chemical analysis, Cone's expert testimony was otherwise reliable under Rule 702(a).

Cone's procedure substantially matches that approved of by this Court in *State v. Abrams*, 248 N.C. App. 639, 789 S.E.2d 863 (2016). There, as here, the defendant challenged the expert witness' testimony as not based on reliable principles and methods and argued she had not applied the principles and methods reliably to the facts of the case under Rule 702(a). *Id.* at 642-46, 789 S.E.2d at 865-67. At trial, the State's expert witness testified she followed the procedures in place at the Crime Lab for identifying marijuana at the time, including weighing the material, conducting a preliminary color test and microscopic examination, followed by a chemical reaction color test. *Id.* at 644, 789 S.E.2d at 866.

At trial, the State called and qualified Cone, a forensic scientist with the Crime Lab, as an expert in drug analysis and identification. Cone testified she tested evidence submitted by the State in accordance with the procedures for identifying

marijuana used by the Crime Lab at the time. Those procedures included weighing the material, a macroscopic test, a preliminary test, a microscopic exam, and a confirmatory test. Based on that testing, Cone concluded the plant material Defendant possessed was cannabis containing THC, "concentration of cannabinoid not determined[.]" This Court has consistently approved of similar procedures in our caselaw. *E.g.*, *Abrams*, 248 N.C. App. at 644-46, 789 S.E.2d at 866-67; *State v. Hall*, 287 N.C. App. 394, *9, 881 S.E.2d 762 (2022) (unpublished). Thus, the expert testimony identifying the plant material as marijuana was sufficiently reliable under Rule of Evidence 702(a). Therefore, the trial court did not plainly err in admitting this testimony.

III. <u>Motion to Dismiss</u>

"This Court reviews the trial court's denial of a motion to dismiss *de novo*." *State v. Smith*, 186 N.C. App. 57, 62, 650 S.E.2d 29, 33 (2007) (citation omitted). "Upon [a] defendant's motion for dismissal, the question for the Court is whether there is substantial evidence (1) of each essential element of the offense charged, or of a lesser offense included therein, and (2) of defendant's being the perpetrator of such offense. If so, the motion is properly denied." *State v. Fritsch*, 351 N.C. 373, 378, 526 S.E.2d 451, 455 (2000) (citation omitted). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *State v. Brown*, 310 N.C. 563, 566, 313 S.E.2d 585, 587 (1984) (citation omitted). "If the evidence is sufficient only to raise a suspicion or conjecture as to

either the commission of the offense or the identity of the defendant as the perpetrator of it, the motion [to dismiss] should be allowed." *Fritsch*, 351 N.C. at 378, 526 S.E.2d at 455. "In making its determination, the trial court must consider all evidence admitted, whether competent or incompetent, in the light most favorable to the State, giving the State the benefit of every reasonable inference and resolving any contradictions in its favor." *State v. Rose*, 339 N.C. 172, 192, 451 S.E.2d 211, 223 (1994) (citation omitted).

Defendant contends the trial court erred in denying his Motion to Dismiss the marijuana-related charges because the State did not present sufficient evidence showing his plant material was marijuana, rather than hemp. The jury found Defendant guilty of both Sale and Delivery of Marijuana pursuant to N.C. Gen. Stat. § 90-95(a)(1).

At trial, the State presented testimony from both Detective Harrell, an experienced narcotics officer, and Lyndsay Cone, a forensic scientist for the Crime Lab, to establish that the plant material was marijuana. First, as discussed previously, Detective Harrell consistently testified he believed the plant material was marijuana "based on [his] training and experience." Further, Detective Harrell testified he heard Defendant discuss an "eighth"—referring to marijuana—and observed Defendant "rolling a marijuana blunt" via surveillance equipment.

Cone, a forensic scientist for the Crime Lab, testified she performed multiple tests and determined the substance belonging to Defendant was "plant material

belonging to the genus cannabis containing [THC], concentration of cannabinoid not determined[.]" Cone acknowledged she could not determine the concentration of THC in the sample in the Crime Lab. However, as Defendant concedes, "our courts have never held [a chemical analysis] is necessary" to allow a jury to determine whether a substance was marijuana or hemp. *State v. Massey*, 287 N.C. App. 501, 511, 882 S.E.2d 740, 749 (2023); *see also State v. Osborne*, 372 N.C. 619, 630-31, 831 S.E.2d 328, 336 (2019). Indeed, our courts have consistently affirmed that testimony identifying a substance as marijuana—from a law enforcement officer as well as a forensic expert—is sufficient to take the matter to the jury. *See State v. Booth*, 286 N.C. App. 71, 78-80, 879 S.E.2d 370, 376-77 (2022); *State v. Massey*, 287 N.C. App. 501, 511, 882 S.E.2d 740, 749 (2023); *State v. Duncan*, 286 N.C. App. 159, *5-*6, 878 S.E.2d 682 (2022) (unpublished); *State v. Johnson*, 225 N.C. App. 440, 455, 737 S.E.2d 442, 451 (2013); *State v. Mitchell*, 217 N.C. App. 401, *3, 720 S.E.2d 29 (2011) (unpublished).

The relevant facts in this case are similar to those in *State v. Booth*, 286 N.C. App. 71, 879 S.E.2d 370 (2022). In *Booth*, a law enforcement officer conducted controlled buys of marijuana using a confidential informant. *Id.* at 72, 879 S.E.2d at 372. The officer recovered a "green leafy substance" which he identified as marijuana based on his training and experience. *Id.* at 73, 79, 879 S.E.2d at 373-74, 376. On appeal, the defendant contended the trial court improperly denied his motion to dismiss the marijuana charges because, in his view, the State had failed to introduce

sufficient evidence the substance in question was marijuana rather than hemp. *Id.* at 77, 879 S.E.2d at 375. At trial, the State presented evidence the defendant admitted seized items—including plastic baggies and a scale—belonged to him; defendant had on his person money that had been provided to the confidential informant; and the law enforcement officer's testimony identifying the substance at issue as marijuana based on his training and experience. *Id.* at 79, 879 S.E.2d at 376. This Court determined this evidence was sufficient to survive the defendant's motion to dismiss. *Id.* at 79-80, 879 S.E.2d at 376-77.

Here, the State presented Detective Harrell's testimony identifying the plant material as marijuana based upon his training and experience as a narcotics officer. Detective Harrell also testified to hearing Defendant discussing an "eighth"—a common unit of marijuana for sale—with the CI via surveillance equipment. Detective Harrell also observed Defendant "rolling a marijuana blunt." Further, the State presented the testimony of Lyndsay Cone, an experienced forensic scientist at the Crime Lab, who performed multiple tests on Defendant's plant material and concluded it was marijuana. Thus, based on our caselaw, the State presented substantial evidence the plant material belonging to Defendant was marijuana. Therefore, the trial court properly denied Defendant's Motion to Dismiss.

IV. Jury Instructions

Defendant argues the trial court plainly erred by not instructing the jury on the legal definitions of marijuana and hemp. Because Defendant made no objection

to the jury instructions at trial, our review is again limited to plain error. *See* N.C.R. App. P. 10(a)(4) (2023) ("In criminal cases, an issue that was not preserved by objection noted at trial and that is not deemed preserved by rule or law without any such action nevertheless may be made the basis of an issue presented on appeal when the judicial action questioned is specifically and distinctly contended to amount to plain error.").

"For error to constitute plain error, a defendant must demonstrate that a fundamental error occurred at trial." *State v. Lawrence*, 365 N.C. 506, 518, 723 S.E.2d 326, 334 (2012) (citation omitted). "To show that an error was fundamental, a defendant must establish prejudice—that, after examination of the entire record, the error 'had a probable impact on the jury's finding that the defendant was guilty.' " *Id.* (quoting *State v. Odom*, 307 N.C. 655, 660, 300 S.E.2d 375, 378 (1983) (citation omitted)).

"The prime purpose of a court's charge to the jury is the clarification of issues, the elimination of extraneous matters, and a declaration and an application of the law arising on the evidence." *State v. Kuhns*, 260 N.C. App. 281, 284, 817 S.E.2d 828, 830 (2018) (quoting *State v. Cameron*, 284 N.C. 165, 171, 200 S.E.2d 186, 191 (1973)). "Accordingly, 'it is the duty of the trial court to instruct the jury on all substantial features of a case raised by the evidence.' " *Id.* (quoting *State v. Shaw*, 322 N.C. 797, 803, 370 S.E.2d 546, 549 (1988)). "It is a well-established principle in this jurisdiction that in reviewing jury instructions for error, they must be considered and reviewed

in their entirety." *Murrow v. Daniels*, 321 N.C. 494, 497, 364 S.E.2d 392, 395 (1988) (citation omitted). "This Court has recognized that the preferred method of jury instruction is the use of the approved guidelines of the North Carolina Pattern Jury Instructions." *State v. Ballard*, 193 N.C. App. 551, 555, 668 S.E.2d 78, 81 (2008) (citation omitted).

Here, during the charge conference discussion on the instructions around the Sale and Delivery of Marijuana charges, Defendant asked the trial court to add the following to the pattern jury instruction: "the term [marijuana] does not include hemp or hemp products." The trial court read the proposed instruction back and defense counsel confirmed that was how he wished it to read. Thus, for Defendant's marijuana charges, the trial court instructed the jury in accordance with the pattern jury instructions, with the only deviation being the inclusion of Defendant's proposed instruction. On appeal, Defendant contends this instruction was plainly erroneous because it omitted information specifying that marijuana has a Delta-9 THC content in excess of 0.3%, while hemp has a Delta-9 THC content of 0.3% or less.

Our Courts have repeatedly approved of jury instructions that are consistent with the North Carolina Pattern Jury Instructions. *See e.g.*, *State v. DeCastro*, 342 N.C. 667, 693, 467 S.E.2d 653, 666 (1996) (concluding instructions were "a correct statement of the law" where "[t]he instruction as given was virtually identical to the pattern jury instructions[.]"). The instruction in this case was identical to the pattern instruction with the exception of Defendant's requested instruction, which the trial

court gave verbatim. Moreover, Defendant's requested instruction was an accurate statement of the law, as our statutes define "marijuana" as "all parts of the plant of the genus Cannabis. . . . The term does not include hemp or hemp products." N.C. Gen. Stat. § 90-87(16) (2023). Thus, we cannot conclude the omission of the language specifying the THC content in marijuana as opposed to hemp was plain error.

V. <u>Concurrent Sentencing</u>

Defendant asserts he was improperly sentenced for both selling and delivering marijuana as part of the same transaction. Even assuming without deciding that Defendant's marijuana convictions both arose from the same transaction, we conclude any error was harmless.

Defendant correctly cites *State v. Moore*, in which our Supreme Court held "[a] defendant may not, however, be convicted under N.C.G.S. § 90-95(a)(1) of both the sale *and* the delivery of a controlled substance arising from a single transfer." 327 N.C. 378, 382, 395 S.E.2d 124, 127 (1990) (emphasis in original). In *Moore*, the defendant was convicted of possession, sale, and delivery of a controlled substance charged in one indictment, as well as possession with intent to sell or deliver, sale of a controlled substance, and delivery of a controlled substance charged in a second indictment. *Id.* at 380, 395 S.E.2d at 125. The trial court consolidated the three counts in each indictment and sentenced the defendant to consecutive sentences of six years of imprisonment. *Id.* at 380, 395 S.E.2d at 126.

This Court recently applied *Moore* in remanding a case for resentencing where the defendant was convicted of two counts each of possession, sale, and delivery of a controlled substance. *State v. Morris*, 288 N.C. App. 65, 88-89, 884 S.E.2d 750, 766-67 (2023). There, the trial court entered judgment on both the sale and delivery charges, sentencing the defendant to two terms of imprisonment of 15 to 27 months. *Id.* at 71, 884 S.E.2d at 755. The instant case is readily distinguishable.

Although Defendant was sentenced for both Sale and Delivery of Marijuana, the trial court consolidated those convictions to run *concurrently* with the longer sentence for Trafficking in a Mixture Containing Heroin by Transportation. Defendant's term of imprisonment would thus be the same even without a sentence for the sale and delivery of marijuana. Indeed, Defendant concedes that even if this matter were remanded for resentencing, the term of imprisonment "might not change" because the sentences run concurrently. Thus, Defendant has not established he was prejudiced by this alleged error. *See State v. Pope*, 257 N.C. 326, 335, 126 S.E.2d 126, 133 (1962) ("A judgment will not be disturbed because of sentencing procedures unless there is a showing of . . . procedural conduct prejudicial to [the] defendant[.]"); *State v. Chivers*, 180 N.C. App. 275, 281, 636 S.E.2d 590, 595 (2006) (overruling assignment of error where trial court improperly calculated defendant's prior record level but defendant was not prejudiced); *State v. Williams*, 65 N.C. App. 472, 478, 310 S.E.2d 83, 87 (1983) ("Upon arrival of the case in the appellate division the burden is upon the criminal defendant not only to show error

but to show prejudicial error."). Therefore, we conclude the trial court did not plainly err in sentencing Defendant on the marijuana-related charges.

VI.     Sentencing Considerations

Finally, Defendant contends the trial court erred in sentencing because, in his view, the trial court considered extraneous information presented by the prosecutor when imposing two consecutive sentences for Trafficking Heroin by Transportation. We disagree.

Prior to sentencing, the trial prosecutor informed the court, "there are circumstances around this particular sale that didn't come out in the trial. . . that being the death of Tina Harrison . . . I know he hasn't been convicted of that, but the State would ask that you take that into consideration." However, during sentencing, the trial court made the following statements to Defendant: "Well, what do you call peddling dope that kills people?" and "I just can't understand. Marijuana you know. . . Marijuana is marijuana. You jacked it up to heroin and fentanyl" and "we have another proceeding at some point in the future because he's charged with death by distribution. I did not consider that. . . . [T]hat will rise or fall on its own evidence." Defendant argues these comments demonstrate the trial court relied on the prosecuting counsel's remarks, directly impacting the imposition of two consecutive active sentences of 70 to 93 months, as opposed to imposing concurrent sentences.

"When this Court is confronted with statutory errors regarding sentencing issues, such errors are questions of law, and as such, are reviewed *de novo*." *State v.*

*Allen*, 249 N.C. App. 376, 379, 790 S.E.2d 588, 591 (2016) (citation and quotation marks omitted). "When a sentence is within the statutory limit it will be presumed regular and valid unless 'the record discloses that the court considered irrelevant and improper matter in determining the severity of the sentence.' " *State v. Davis*, 167 N.C. App. 770, 775, 607 S.E.2d 5, 9 (2005) (quoting *State v. Johnson*, 320 N.C. 746, 753, 360 S.E.2d 676, 681 (1987)). "If the record discloses that the [trial] court considered irrelevant and improper matter in determining the severity of the sentence, the presumption of regularity is overcome, and the sentence is in violation of [the] defendant's rights." *State v. Boone*, 293 N.C. 702, 712, 239 S.E.2d 459, 465 (1977) (citation omitted). However, where "the record reveals no such express indication of improper motivation," the defendant is not entitled to a new sentencing hearing. *Johnson*, 320 N.C. at 753, 360 S.E.2d at 681. In the present case, we cannot conclude that the trial court improperly considered extraneous information in determining the nature of Defendant's sentence.

This Court has previously analyzed a trial court's sentencing considerations in *State v. Oakes*, 219 N.C. App. 490, 724 S.E.2d 132 (2012). There, the Court observed, "defendant cites no authority—and we know of none—suggesting that a trial court may not take into account the seriousness of a crime and the defendant's criminal record in deciding where within a presumptive range a defendant's sentence should fall." *Id.* at 497, 724 S.E.2d at 137. Indeed, the Court noted, "If a trial court is free to choose 'any' minimum term, we fail to see why a trial court should not be able to

take into account the seriousness of the particular offense when exercising its discretion[.]" *Id.* at 498, 724 S.E.2d at 138.

Similarly, in *State v. Butler*, when sentencing the defendant on two drug trafficking charges, the trial court expressly cited the broader impact of drugs on the community as a reason for imposing consecutive, rather than concurrent, active sentences. 147 N.C. App. 1, 13-14, 556 S.E.2d 304, 312 (2001). There, during sentencing, the trial court explained the sentence it imposed as follows: "The primary [reason] is that drugs in the community impact a lot of people, not just individuals who take the drugs. . . . It impacts everybody around you[.]" *Id.* at 14, 556 S.E.2d at 312. On appeal, this Court affirmed the trial court's decision, holding it was not improper for the trial court to consider the general societal impact of drugs when determining sentences, even though it was not specifically related to the defendant's actions. *Id.* at 14, 556 S.E.2d at 313. Finally, in *State v. Juarez*, Defendant appealed consecutive active sentences for Trafficking in Heroin. 270 N.C. App. 202, *1, 837 S.E.2d 724 (2020) (unpublished). Although *Juarez* is unpublished and thus not controlling legal authority,[2] we find it instructive. There, this Court rejected the defendant's claim, holding "it was not improper for the trial court to consider the impact of drugs when deciding the appropriate sentence for defendant." *Id.* at *3.

---

[2] Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure provides: "An unpublished decision of the North Carolina Court of Appeals does not constitute controlling legal authority." N.C.R. App. P. 30(e)(3) (2024).

This is consistent with *Butler*'s holding that a trial court may weigh the broader effects of drugs when imposing sentences for drug-related offenses. Thus, this Court has consistently affirmed a trial court's discretion to consider certain factors beyond the immediate offense, such as societal impact and the severity of the crime, when determining sentences.

Here, Defendant contends the trial court improperly considered extraneous information during sentencing, specifically outside drug charges and a death by distribution charge. Although the trial court acknowledged the prosecutor's request to consider these factors, it expressly said it did not consider the death by distribution charge, stating, "I did not consider that. . . . [T]hat will rise or fall on its own evidence." In the present case, the Record is even clearer than those in *Oakes*, *Butler*, and *Juarez*. Unlike the aforementioned cases, the trial court here expressly rejected the prosecutor's arguments regarding the separate charges on the Record and affirmatively stated that other charges would be considered in separate proceedings. The trial court's unambiguous language reinforces our conclusion the trial court did not rely on the separate charges against Defendant.

Moreover, the challenged statements fall within the bounds of permissible considerations under our caselaw. During sentencing, the trial court made references to the societal impact of drugs and the severity of Defendant's offenses:

> I don't know how in the world you thought that it was anywhere near a good business to be in to sell fentanyl and heroin but fentanyl that kills people just by touching it and you seem like a

> smart guy, and I'm pretty sure you saw on the news people dying of fentanyl all the time, and it escapes me that you didn't just dismiss that because you were making money with – with getting people hooked on this terrible, terrible drug.

As this Court noted in *Butler*, consideration of the broader societal impact of drug crimes is permissible during sentencing. 147 N.C. App. at 14, 556 S.E.2d at 313. Further, as in *Oakes*, it is within the trial court's discretion to consider the severity of the crime itself at sentencing. 219 N.C. App. at 498, 724 S.E.2d at 138.

Defendant points to *State v. Johnson*, 265 N.C. App. 85, 827 S.E.2d 139 (2019), in support of his argument. There, this Court vacated the defendant's sentence after determining the trial court improperly considered offenses for which the defendant had not been charged. *Id.* at 90-91, 827 S.E.2d at 143. In that case, the trial court expressly acknowledged matters outside the record in sentencing, stating they were "even more important[ ] to me." *Id.* at 88, 827 S.E.2d at 141. The present case is distinguishable.

In *Johnson*, "the trial judge did not just consider the impact of [the] defendant's drug offenses on the community, but clearly indicated in her remarks that she was considering a specific offense in her community for which [the] defendant was not charged." *Id.* at 89, 827 S.E.2d at 142. In contrast, here the trial court expressly rejected the prosecutor's arguments regarding other charges, stating: "we have another proceeding at some point in the future because he's charged with death by distribution. *I did not consider that*. . . . [T]hat will rise or fall on its own evidence."

The clear rejection of extraneous information rebuts Defendant's claim the trial court relied on impermissible factors in sentencing him.

Thus, there is no indication on this Record the sentence imposed on Defendant was based on improper extraneous information. Therefore, the trial court did not err in sentencing Defendant to consecutive active sentences within the presumptive range set by the sentencing guidelines. Consequently, the trial court properly entered the Judgments on Defendant's convictions.

## **Conclusion**

Accordingly, for the foregoing reasons, we conclude there was no error in Defendant's trial and affirm the Judgments.

NO ERROR.

Judges ARROWOOD and COLLINS concur.